## HINES ET AL. *v.* ANCHOR MOTOR FREIGHT, INC., ET AL.

No. 74-1025.   Argued November 12, 1975—Decided March 3, 1976

White, J., delivered the opinion of the Court, in which Brennan, Stewart, Marshall, Blackmun, and Powell, JJ., joined. Stewart, J., filed a concurring opinion, *post*, p. 572. Rehnquist, J., filed a dissenting opinion, in which Burger, C. J., joined, *post*, p. 573. Stevens, J., took no part in the consideration or decision of the case.

*Niki Z. Schwartz* argued the cause and filed briefs for petitioners.

*Bernard S. Goldfarb* argued the cause and filed a brief for respondent Anchor Motor Freight, Inc. *David Leo Uelmen* and *Eugene Green* filed a brief for respondent Local Union No. 377. *David Previant* and *George Kaufmann* filed a brief for respondent International Brother-

hood of Teamsters, Chauffeurs, Warehousemen & Helpers of America.*

MR. JUSTICE WHITE delivered the opinion of the Court.

The issue here is whether a suit against an employer by employees asserting breach of a collective-bargaining contract was properly dismissed where the accompanying complaint against the union for breach of duty of fair representation has withstood the union's motion for summary judgment and remains to be tried.

I

Petitioners,[1] who were formerly employed as truck drivers by respondent Anchor Motor Freight, Inc. (Anchor), were discharged on June 5, 1967. The applicable collective-bargaining contract forbade discharges without just cause. The company charged dishonesty. The practice at Anchor was to reimburse drivers for money spent for lodging while the drivers were on the road overnight. Anchor's assertion was that petitioners had sought reimbursement for motel expenses in excess of the actual charges sustained by them. At a meeting between the company and the union, Local 377, International Brotherhood of Teamsters (Union), which was also attended by petitioners, Anchor presented motel receipts previously submitted by petitioners which were in excess of the charges shown on the motel's registration cards; a notarized statement of the motel clerk asserting

---

*Arthur L. Fox II filed a brief for Prod, Inc., et al. as amici curiae urging reversal.

[1] Two of the original petitioners, Burtice A. Hines and Arthur D. Cartwright, are deceased. Charles A. Hines and Chyra J. Cartwright have been substituted as party petitioners. 423 U. S. 816, 982 (1975).

the accuracy of the registration cards; and an affidavit of the motel owner affirming that the registration cards were accurate and that inflated receipts had been furnished petitioners. The Union claimed petitioners were innocent and opposed the discharges. It was then agreed that the matter would be presented to the joint arbitration committee for the area, to which the collective-bargaining contract permitted either party to submit an unresolved grievance.[2] Pending this hearing, petitioners were reinstated. Their suggestion that the motel be investigated was answered by the Union representatives' assurances that "there was nothing to worry about" and that they need not hire their own attorney.

A hearing before the joint area committee was held on July 26, 1967. Anchor presented its case. Both the Union and petitioners were afforded an opportunity to present their case and to be heard. Petitioners denied their dishonesty, but neither they nor the Union presented any other evidence contradicting the documents presented by the company. The committee sustained

---

[2] The contractual grievance procedure is set out in Art. 7 of the Central Conference Area Supplement to the National Master Automobile Transporters Agreement. App. 226–233. Grievances were to be taken up by the employee involved and if no settlement was reached, were then to be considered by the business agent of the local union and the employer representative. If the dispute remained unresolved, either party had the right to present the case for decision to the appropriate joint area arbitration committee. These committees are organized on a geographical area basis and hear grievances in panels made up of an equal number of representatives of the parties to the collective-bargaining agreement. Cases that deadlocked before the joint area committee could be taken to a panel of the national joint arbitration committee, composed like the area committee panels of an equal number of representatives of the parties to the agreement. If unresolved there, they would be resolved by a panel including an impartial arbitrator. The joint arbitration committee for the Detroit area is involved in this case.

the discharges. Petitioners then retained an attorney and sought rehearing based on a statement by the motel owner that he had no personal knowledge of the events, but that the discrepancy between the receipts and the registration cards could have been attributable to the motel clerk's recording on the cards less than was actually paid and retaining for himself the difference between the amount receipted and the amount recorded. The committee, after hearing, unanimously denied rehearing "because there was no new evidence presented which would justify a reopening of this case." App. 212.

There were later indications that the motel clerk was in fact the culprit; and the present suit was filed in June 1969, against Anchor, the Union, and its International. The complaint alleged that the charges of dishonesty made against petitioners by Anchor were false, that there was no just cause for discharge, and that the discharges had been in breach of contract. It was also asserted that the falsity of the charges could have been discovered with a minimum of investigation, that the Union had made no effort to ascertain the truth of the charges, and that the Union had violated its duty of fair representation by arbitrarily and in bad faith depriving petitioners of their employment and permitting their discharge without sufficient proof.

The Union denied the charges and relied on the decision of the joint area committee. Anchor asserted that petitioners had been properly discharged for just cause. It also defended on the ground that petitioners, diligently and in good faith represented by the Union, had unsuccessfully resorted to the grievance and arbitration machinery provided by the contract and that the adverse decision of the joint arbitration committee was binding upon the Union and petitioners under the contractual provision declaring that "[a] decision by a majority of a

Panel of any of the Committees shall be final and binding on all parties, including the employee and/or employees affected."[3]   Discovery followed, including a deposition of the motel clerk revealing that he had falsified the records and that it was he who had pocketed the difference between the sums shown on the receipts and the registration cards.   Motions for summary judgment filed by Anchor and the Unions were granted by the District Court on the ground that the decision of the arbitration committee was final and binding on the employees and "for failure to show facts comprising bad faith, arbitrariness or perfunctoriness on the part of the Unions."   72 CCH Lab. Cas. ¶ 13,987, p. 28,131 (ND Ohio 1973).   Although indicating that the acts of the Union "may not meet professional standards of competency, and while it might have been advisable for the Union to further investigate the charges . . . ," the District Court concluded that the facts demonstrated at most bad judgment on the part of the Union, which was insufficient to prove a breach of duty or make out a prima facie case against it.   *Id.*, at 28,132.

After reviewing the allegations and the record before it, the Court of Appeals concluded that there were sufficient facts from which bad faith or arbitrary conduct on the part of the local Union could be inferred by the trier of fact and that petitioners should have been afforded an opportunity to prove their charges.[4]   To

---

[3] The provision is contained in § 5 of Art. 7.  App. 231.  In addition, § 7 (c) of the same article provides that all decisions of the national and area committees with respect to the interpretation of the contract "shall be final and conclusive and binding upon the Employer and the Union, and the employees involved."  App. 232.

[4] As summarized by the Court of Appeals, the allegations relied on were:

"They consist of the motel clerk's admission, made a year after the discharge was upheld in arbitration, that he, not plaintiffs,

this extent the judgment of the District Court was reversed. The Court of Appeals affirmed the judgment in favor of Anchor and the International. Saying that petitioners wanted to relitigate their discharges because of the recantation of the motel clerk, the Court of Appeals, quoting from its prior opinion in *Balowski* v. *International Union,* 372 F. 2d 829 (CA6 1967),[5] concluded that the finality provision of collective-bargaining contracts must be observed because there was "[n]o evidence of any misconduct on the part of the employer . . ." and wholly insufficient evidence of any conspiracy between the Union and Anchor. 506 F. 2d, at 1157, 1158.[6]

---

pocketed the money; the claim of the union's failure to investigate the motel clerk's original story implicating plaintiffs despite their requests; the account of the union officials' assurances to plaintiffs that 'they had nothing to worry about' and 'that there was no need for them to investigate'; the contention that no exculpatory evidence was presented at the hearing; and the assertion that there existed political antagonism between local union officials and plaintiffs because of a wildcat strike led by some of the plaintiffs and a dispute over the appointment of a steward, resulting in denunciation of plaintiffs as 'hillbillies' by Angelo, the union president." 506 F. 2d 1153, 1156 (CA6 1974).

[5] The quoted segment of the opinion in *Balowski* v. *International Union,* 372 F. 2d, at 833, was:

" 'It is apparent that what plaintiff is attempting to do is to relitigate his grievance in this proceeding. This he cannot do when the collective bargaining agreement provides for final and binding arbitration of all disputes, absent a showing of fraud, misrepresentation, bad faith, dishonesty of purpose, or such gross mistake or inaction as to imply bad faith on the part of the Union or the employer.' " 506 F. 2d, at 1157 (citation omitted).

The rule in the Sixth Circuit, under *Balowski,* would appear to have been that an employee could litigate his discharge in court if he proved bad faith or gross mistake on the part of *either* the union or the employer.

[6] One judge, otherwise concurring, dissented as to affirming summary judgment against Anchor because "issues of fact . . . pre-

It is this judgment of the Court of Appeals with respect to Anchor that is now before us on our limited grant of the employees' petition for writ of certiorari. 421 U. S. 928 (1975).[7] We reverse that judgment.

## II

Section 301 of the Labor Management Relations Act, 1947, 61 Stat. 156, 29 U. S. C. § 185, provides for suits in the district courts for violation of collective-bargaining contracts between labor organizations and employers without regard to the amount in controversy.[8] This provision reflects the interest of Congress in promoting "a higher degree of responsibility upon the parties to such agreements . . . ." S. Rep. No. 105, 80th Cong., 1st Sess.,

---

sented by the pleadings concerning plaintiffs' charges against the employer . . . should not have been dealt with on summary judgment." 506 F. 2d, at 1158.

[7] Our order of April 21, 1975, was as follows:

"Certiorari granted limited to Question 1 presented by the petition which reads as follows:

" '1. Whether petitioners' claim under LMRA § 301 for wrongful discharge is barred by the decision of a joint grievance committee upholding their discharge, notwithstanding that their union breached its duty of fair representation in processing their grievance so as to deprive them and the grievance committee of overwhelming evidence of their innocence of the alleged dishonesty for which they were discharged?' "

The affirmance of summary judgment in favor of the International is therefore not before us. Nor is the judgment of the Court of Appeals reversing the summary judgment in favor of Local 377, since the Union has not sought review of this ruling.

[8] § 301 (a), 29 U. S. C. § 185 (a):

"Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

17 (1947). The strong policy favoring judicial enforcement of collective-bargaining contracts was sufficiently powerful to sustain the jurisdiction of the district courts over enforcement suits even though the conduct involved was arguably or would amount to an unfair labor practice within the jurisdiction of the National Labor Relations Board. *Smith* v. *Evening News Assn.*, 371 U. S. 195 (1962); *Atkinson* v. *Sinclair Rfg. Co.*, 370 U. S. 238 (1962); *Teamsters* v. *Lucas Flour Co.*, 369 U. S. 95 (1962); *Charles Dowd Box Co.* v. *Courtney*, 368 U. S. 502 (1962). Section 301 contemplates suits by and against individual employees as well as between unions and employers; and contrary to earlier indications § 301 suits encompass those seeking to vindicate "uniquely personal" rights of employees such as wages, hours, overtime pay, and wrongful discharge. *Smith* v. *Evening News Assn., supra,* at 198–200. Petitioners' present suit against the employer was for wrongful discharge and is the kind of case Congress provided for in § 301.

Collective-bargaining contracts, however, generally contain procedures for the settlement of disputes through mutual discussion and arbitration. These provisions are among those which are to be enforced under § 301. Furthermore, Congress has specified in § 203 (d), 61 Stat. 154, 29 U. S. C. § 173 (d), that "[f]inal adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes . . . ." This congressional policy "can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play." *Steelworkers* v. *American Mfg. Co.*, 363 U. S. 564, 566 (1960). Courts are not to usurp those functions which collective-bargaining contracts have properly "entrusted to the arbi-

tration tribunal." *Id.*, at 569. They should not undertake to review the merits of arbitration awards but should defer to the tribunal chosen by the parties finally to settle their disputes. Otherwise "plenary review by a court of the merits would make. meaningless the provisions that the arbitrator's decision is final, for in reality it would almost never be final." *Steelworkers* v. *Enterprise Corp.*, 363 U. S. 593, 599 (1960).

Pursuant to this policy, we later held that an employee could not sidestep the grievance machinery provided in the contract and that unless he attempted to utilize the contractual procedures for settling his dispute with his employer, his independent suit against the employer in the District Court would be dismissed. *Republic Steel Corp.* v. *Maddox,* 379 U. S. 650 (1965). *Maddox* nevertheless distinguished the situation where "the union refuses to press or only perfunctorily presses the individual's claim . . . . See *Humphrey* v. *Moore,* 375 U. S. 335; *Labor Board* v. *Miranda Fuel Co.,* 326 F. 2d 172." *Id.,* at 652 (footnote omitted).

The reservation in *Maddox* was well advised. The federal labor laws, in seeking to strengthen the bargaining position of the average worker in an industrial economy, provided for the selection of collective-bargaining agents with wide authority to negotiate and conclude collective-bargaining agreements on behalf of all employees in appropriate units, as well as to be the employee's agent in the enforcement and administration of the contract. Wages, hours, working conditions, seniority, and job security therefore became the business of certified or recognized bargaining agents, as did the contractual procedures for the processing and settling of grievances, including those with respect to discharge.

Necessarily "[a] wide range of reasonableness must be allowed a statutory bargaining representative in serv-

ing the unit it represents . . . ." *Ford Motor Co.* v. *Huffman,* 345 U. S. 330, 338 (1953). The union's broad authority in negotiating and administering effective agreements is "undoubted," *Humphrey* v. *Moore,* 375 U. S. 335, 342 (1964), but it is not without limits. Because "[t]he collective bargaining system as encouraged by Congress and administered by the NLRB of necessity subordinates the interests of an individual employee to the collective interests of all employees in a bargaining unit," *Vaca* v. *Sipes,* 386 U. S. 171, 182 (1967), the controlling statutes have long been interpreted as imposing upon the bargaining agent a responsibility equal in scope to its authority, "the responsibility and duty of fair representation." *Humphrey* v. *Moore, supra,* at 342. The union as the statutory representative of the employees is "subject always to complete good faith and honesty of purpose in the exercise of its discretion." *Ford Motor Co.* v. *Huffman, supra,* at 338. Since *Steele* v. *Louisville & N. R. Co.,* 323 U. S. 192 (1944), with respect to the railroad industry, and *Ford Motor Co.* v. *Huffman, supra,* and *Syres* v. *Oil Workers,* 350 U. S. 892 (1955), with respect to those industries reached by the National Labor Relations Act, the duty of fair representation has served as a "bulwark to prevent arbitrary union conduct against individuals stripped of traditional forms of redress by the provisions of federal labor law." *Vaca* v. *Sipes, supra,* at 182.

Claims of union breach of duty may arise during the life of a contract when individual employees claim wrongful discharge or other improper treatment at the hands of the employer. Contractual remedies, at least in their final stages controlled by union and employer, are normally provided; yet the union may refuse to utilize them or, if it does, assertedly may do so discriminatorily or in bad faith. "The problem then is to determine under

what circumstances the individual employee may obtain judicial review of his breach-of-contract claim despite his failure to secure relief through the contractual remedial procedures." *Vaca* v. *Sipes, supra,* at 185.

*Humphrey* v. *Moore, supra,* involved a seniority dispute between the employees of two transportation companies whose operating authorities had been combined. The employees accorded lesser seniority were being laid off. Their grievances were presented to the company and taken by the union to the joint arbitration committee pursuant to contractual provisions very similar to those now before us. The decision was adverse. The employees then brought suit in the state court against the company, the union, and the favored employees, asserting breach of contract by the company and breach of its duty of fair representation by the union. They sought damages and an injunction to prevent implementation of the decision of the joint arbitration committee. The union was charged with dishonest and bad-faith representation of the employees before the joint committee. The unions and the defendant employees asserted the finality of the joint committee's decision, if not as a final resolution of a dispute in the administration of a contract, as a bargained-for accommodation between the two parties. The state courts issued the injunction. Respondents argued here that "the decision of the Committee was obtained by dishonest union conduct in breach of its duty of fair representation and that a decision so obtained cannot be relied upon as a valid excuse for [their] discharge under the contract." 375 U. S., at 342. We reversed the judgment of the state court but only after independently determining that the union's conduct was not a breach of its statutory duties and that the joint committee's decision was not infirm for that reason. Our conclusion was that the disfavored employees had not

proved their case: "Neither the parties nor the Joint Committee exceeded their power under the contract and there was no fraud or breach of duty by the exclusive bargaining agent. The decision of the committee, reached after proceedings adequate under the agreement, is final and binding upon the parties, just as the contract says it is." *Id.*, at 351.

In *Vaca* v. *Sipes, supra,* the discharged employee sued the union alleging breach of its duty of fair representation in that it had refused in bad faith to take the employee's grievance to arbitration as it could have under the contract. In the course of rejecting the claim that the alleged conduct was arguably an unfair practice within the exclusive jurisdiction of the Labor Board, we ruled that "the wrongfully discharged employee may bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance." 386 U. S., at 186 (footnote omitted). This was true even though "the employer in such a situation may have done nothing to prevent exhaustion of the exclusive contractual remedies . . . ," for "the employer has committed a wrongful discharge in breach of that agreement, a breach which could be remedied through the grievance process . . . were it not for the union's breach of its statutory duty of fair representation . . . ." *Id.*, at 185. We could not "believe that Congress, in conferring upon employers and unions the power to establish exclusive grievance procedures, intended to confer upon unions such unlimited discretion to deprive injured employees of all remedies for breach of contract." *Id.*, at 186. Nor did we "think that Congress intended to shield employers from the natural consequences of their breaches of bar-

gaining agreements by wrongful union conduct in the enforcement of such agreements." *Ibid.* At the same time "we conclude[d] that a union does not breach its duty of fair representation . . . merely because it settled the grievance short of arbitration." *Id.,* at 192. "If the individual employee could compel arbitration of his grievance regardless of its merit," that is, compel both employers and unions to make full use of the contractual provisions for settling disputes by arbitration, "the settlement machinery provided by the contract would be substantially undermined," for curtailing the "power to settle the majority of grievances short of the costlier and more time-consuming steps" might deter the parties to collective-bargaining agreements from making "provi-[sion] for detailed grievance and arbitration procedures of the kind encouraged by L. M. R. A. § 203 (d)." *Id.,* at 191–192. We also expressly indicated that suit against the employer and suit against the union could be joined in one action. *Id.,* at 187.

### III

Even though under *Vaca* the employer may not insist on exhaustion of grievance procedures when the union has breached its representation duty, it is urged that when the procedures have been followed and a decision favorable to the employer announced, the employer must be protected from relitigation by the express contractual provision declaring a decision to be final and binding. We disagree. The union's breach of duty relieves the employee of an express or implied requirement that disputes be settled through contractual grievance procedures; if it seriously undermines the integrity of the arbitral process the union's breach also removes the bar of the finality provisions of the contract.

It is true that *Vaca* dealt with a refusal by the union

to process a grievance. It is also true that where the union actually utilizes the grievance and arbitration procedures on behalf of the employee, the focus is no longer on the reasons for the union's failure to act but on whether, contrary to the arbitrator's decision, the employer breached the contract and whether there is substantial reason to believe that a union breach of duty contributed to the erroneous outcome of the contractual proceedings. But the judicial remedy in *Humphrey* v. *Moore* was sought after the adverse decision of the joint arbitration committee. Our conclusion in that case was not that the committee's decision was unreviewable. On the contrary, we proceeded on the basis that it was reviewable and vulnerable if tainted by breach of duty on the part of the union, even though the employer had not conspired with the union. The joint committee's decision was held binding on the complaining employees only after we determined that the union had not been guilty of malfeasance and that its conduct was within the range of acceptable performance by a collective-bargaining agent, a wholly unnecessary determination if the union's conduct was irrelevant to the finality of the arbitral process.[9]

In *Vaca* "we accept[ed] the proposition that a union

---

[9] *Czosek* v. *O'Mara*, 397 U. S. 25 (1970), which arose under the Railway Labor Act, 44 Stat. 577, as amended, 45 U. S. C. § 151 *et seq.*, involved a claim that a railroad had wrongfully deprived plaintiff of his seniority and that the union had failed in its duty to protest. The suit against the union was sustained by the Court of Appeals, but dismissal of the claim against the railroad was affirmed absent allegation that the company had participated in the union's breach. In affirming the judgment we upheld the Court of Appeals' ruling against the union, but did not reach the question whether the railroad was properly dismissed over the employee's objections, since the latter did not challenge the judgment in this respect.

may not arbitrarily ignore a meritorious grievance or process it in a perfunctory fashion," 386 U. S., at 191, and our ruling that the union had not breached its duty of fair representation in not pressing the employee's case to the last step of the grievance process stemmed from our evaluation of the manner in which the union had handled the grievance in its earlier stages. Although "the Union might well have breached its duty had it ignored [the employee's] complaint or had it processed the grievance in a perfunctory manner," "the Union conclude[d] both that arbitration would be fruitless and that the grievance should be dismissed" only after it had "processed the grievance into the fourth step, attempted to gather sufficient evidence to prove [the employee's] case, attempted to secure for [him] less vigorous work at the plant, and joined in the employer's efforts to have [him] rehabilitated." *Id.*, at 194.

Anchor would have it that petitioners are foreclosed from judicial relief unless some blameworthy conduct on its part disentitles it to rely on the finality rule. But it was Anchor that originated the discharges for dishonesty. If those charges were in error, Anchor has surely played its part in precipitating this dispute. Of course, both courts below held there were no facts suggesting that Anchor either knowingly or negligently relied on false evidence. As far as the record reveals it also prevailed before the joint committee after presenting its case in accordance with what were ostensibly wholly fair procedures. Nevertheless there remains the question whether the contractual protection against relitigating an arbitral decision binds employees who assert that the process has fundamentally malfunctioned by reason of the bad-faith performance of the union, their statutorily imposed collective-bargaining agent.

Under the rule announced by the Court of Appeals, unless the employer is implicated in the Union's malfeasance or has otherwise caused the arbitral process to err, petitioners would have no remedy against Anchor even though they are successful in proving the Union's bad faith, the falsity of the charges against them, and the breach of contract by Anchor by discharging without cause. This rule would apparently govern even in circumstances where it is shown that a union has manufactured the evidence and knows from the start that it is false; or even if, unbeknownst to the employer, the union has corrupted the arbitrator to the detriment of disfavored union members. As is the case where there has been a failure to exhaust, however, we cannot believe that Congress intended to foreclose the employee from his § 301 remedy otherwise available against the employer if the contractual processes have been seriously flawed by the union's breach of its duty to represent employees honestly and in good faith and without invidious discrimination or arbitrary conduct.

It is urged that the reversal of the Court of Appeals will undermine not only the finality rule but the entire collective-bargaining process. Employers, it is said, will be far less willing to give up their untrammeled right to discharge without cause and to agree to private settlement procedures. But the burden on employees will remain a substantial one, far too heavy in the opinion of some.[10] To prevail against either the company or the Union, petitioners must not only show that their discharge was contrary to the contract but must also carry the burden of demonstrating breach of duty by the

---

[10] Mr. Justice Black, for one, was of the view that where the union refused to process a grievance, the employee should be allowed his suit in court without proof of the union's breach of duty. *Vaca v. Sipes*, 386 U. S. 171, 203 (1967) (dissenting opinion).

Union.   As the District Court indicated, this involves more than demonstrating mere errors in judgment.

Petitioners are not entitled to relitigate their discharge merely because they offer newly discovered evidence that the charges against them were false and that in fact they were fired without cause.   The grievance processes cannot be expected to be error-free.   The finality provision has sufficient force to surmount occasional instances of mistake.   But it is quite another matter to suggest that erroneous arbitration decisions must stand even though the employee's representation by the union has been dishonest, in bad faith, or discriminatory; for in that event error and injustice of the grossest sort would multiply.   The contractual system would then cease to qualify as an adequate mechanism to secure individual redress for damaging failure of the employer to abide by the contract.   Congress has put its blessing on private dispute settlement arrangements provided in collective agreements, but it was anticipated, we are sure, that the contractual machinery would operate within some minimum levels of integrity. In our view, enforcement of the finality provision where the arbitrator has erred is conditioned upon the union's having satisfied its statutory duty fairly to represent the employee in connection with the arbitration proceedings. Wrongfully discharged employees would be left without jobs and without a fair opportunity to secure an adequate remedy.

Except for this case the Courts of Appeals have arrived at similar conclusions.[11]   As the Court of Appeals for the

---

[11] *Steinman* v. *Spector Freight System, Inc.*, 441 F. 2d 599 (CA2 1971); *Butler* v. *Local Union 823, International Brotherhood of Teamsters*, 514 F. 2d 442 (CA8), cert. denied, 423 U. S. 924 (1975); *Margetta* v. *Pam Pam Corp.*, 501 F. 2d 179 (CA9 1974); *Local 13, International Longshoremen's & Warehousemen's Union*

Ninth Circuit put it in *Margetta* v. *Pam Pam Corp.*, 501 F. 2d 179, 180 (1974): "To us, it makes little difference whether the union subverts the arbitration process by refusing to proceed as in *Vaca* or follows the arbitration trail to the end, but in so doing subverts the arbitration process by failing to fairly represent the employee. In neither case, does the employee receive fair representation."

Petitioners, if they prove an erroneous discharge and the Union's breach of duty tainting the decision of the joint committee, are entitled to an appropriate remedy against the employer as well as the Union. It was error to affirm the District Court's final dismissal of petitioners' action against Anchor. To this extent the judgment of the Court of Appeals is reversed.

*So ordered.*

MR. JUSTICE STEVENS took no part in the consideration or decision of this case.

MR. JUSTICE STEWART, concurring.

I agree with the Court that proof of breach of the Union's duty of fair representation will remove the bar of finality from the arbitral decision that Anchor did not wrongfully discharge the petitioners. See *Vaca* v. *Sipes*, 386 U. S. 171, 194; *Humphrey* v. *Moore*, 375 U. S. 335, 348–351. But this is not to say that proof of breach of the Union's representation duty would render Anchor potentially liable for backpay accruing between the time of the "tainted" decision by the arbitration committee

_____

v. *Pacific Maritime Assn.*, 441 F. 2d 1061 (CA9 1971), cert. denied, 404 U. S. 1016 (1972). See also *Bieski* v. *Eastern Automobile Forwarding Co.*, 396 F. 2d 32, 38 (CA3 1968); *Rothlein* v. *Armour & Co.*, 391 F. 2d 574, 579–580 (CA3 1968); *Harris* v. *Chemical Leaman Tank Lines, Inc.*, 437 F. 2d 167, 171 (CA5 1971); *Andrus* v. *Convoy Co.*, 480 F. 2d 604, 606 (CA9), cert. denied, 414 U. S. 989 (1973).

and a subsequent "untainted" determination that the discharges were, after all, wrongful.

If an employer relies in good faith on a favorable arbitral decision, then his failure to reinstate discharged employees cannot be anything but rightful, until there is a contrary determination. Liability for the intervening wage loss must fall not on the employer but on the union. Such an apportionment of damages is mandated by *Vaca*'s holding that "damages attributable solely to the employer's breach of contract should not be charged to the union, but increases if any in those damages caused by the union's refusal to process the grievance should not be charged to the employer." 386 U. S., at 197–198. To hold an employer liable for back wages for the period during which he rightfully refuses to rehire discharged employees would be to charge him with a contractual violation on the basis of conduct precisely in accord with the dictates of the collective agreement.

MR. JUSTICE REHNQUIST, with whom THE CHIEF JUSTICE joins, dissenting.

Petitioners seek $1 million damages from their employer and their union on the grounds that they were wrongfully discharged from their jobs. The District Court granted summary judgment for respondents, finding that the issues had been finally decided as to respondent Anchor Motor by the arbitration committee and that petitioners had failed "to show facts comprising bad faith, arbitrariness or perfunctoriness on the part of the Unions." The Court of Appeals reversed the summary judgment as to the local Union, holding that the issue of bad faith should not have been summarily decided. However, as to respondent Anchor Motor the Court of Appeals affirmed, holding that where, as here, the collective-bargaining agreement provided that arbitra-

tion would be final and binding, the decision of the arbitrator would not be upset, "absent a showing of fraud, misrepresentation, bad faith, dishonesty of purpose, or such gross mistake or inaction as to imply bad faith on the part of the Union or the employer." 506 F. 2d 1153, 1157 (1974). This Court, assuming *arguendo* that the Union breached its duty of fair representation for the reasons set forth in the opinion, reverses as to Anchor Motor, holding that the *Union's* breach of its duty to its members voided an otherwise valid arbitration decision in favor of the *company*. I find this result to be anomalous and contrary to the longstanding policy of this Court favoring the finality of arbitration awards.

In *Vaca* v. *Sipes,* 386 U. S. 171 (1967), this Court held that, where the union has prevented the employee from taking his grievance to arbitration, as provided in the collective-bargaining agreement, he may then turn to the courts for relief. This decision bolstered the consistent policy of this Court of encouraging the parties to settle their differences according to the terms of their collective-bargaining agreement. *Steelworkers* v. *American Mfg. Co.,* 363 U. S. 564, 566 (1960). By subjecting the employer to a damages suit due to the union's failure to utilize the arbitration process on behalf of the employees, the *Vaca* decision put pressure on both employers and unions to make full use of the contractual provisions for settling disputes by arbitration.

The decision in this case will have the exact opposite result. Here the Court has cast aside the policy of finality of arbitration decisions and established a new policy of encouraging challenges to arbitration decrees by the losing party on the ground that he was not properly represented.

The majority cites *Margetta* v. *Pam Pam Corp.,* 501 F. 2d 179, 180 (CA9 1974), for the proposition that "it

makes little difference whether the union subverts the arbitration process by refusing to proceed as in *Vaca* or follows the arbitration trail to the end, but in so doing subverts the arbitration process by failing to fairly represent the employee." *Ante,* at 572. To the contrary, I believe that the existence of a final arbitration decision is the crucial difference between this case and *Vaca.* The duty of "fair representation" discussed in *Vaca* was the duty of the union to put the case to a fair and neutral arbitrator, a step which the employee could not take by himself. 386 U. S., at 185.

Here the case *was* presented to a concededly fair and neutral arbitrator but the claim is that that arbitration decision should be vacated because the employee did not receive "fair representation" from the Union in the sense of representation by counsel at a trial. Obviously this stretches *Vaca* far beyond its original meaning and adopts the novel notion that one may vacate an otherwise valid arbitration award because his "counsel" was ineffective.

As noted, such a principle violates this Court's policy favoring the finality of arbitration awards. It also has no basis in the statutory provisions respecting arbitration. Section 12 of the Uniform Arbitration Act, which is in use in many States, sets forth the grounds for vacating an award. These include awards having been procured by corruption or fraud, and arbitrators' exceeding their powers or exhibiting evident partiality. The federal statute governing arbitration, 9 U. S. C. §§ 1–14, provides similarly narrow grounds for vacating an award. § 10. Nowhere is any provision made for vacation of an award due to ineffective presentation of the case by a party's attorney or representative.

The Court's decision is particularly vexing on the facts of this case. Petitioners had at their own disposal

all of the information necessary to present their case. If they had felt that the Union had not brought this information fully to the attention of the arbitration committee or that further investigation was necessary they could have so informed the committee. There is no indication that they did so. Rather, they allowed, without protest, the arbitration to proceed to a decision and when that decision was adverse they brought suit against the company and the Union.

Now the employer, which concededly acted in good faith throughout these proceedings, is to be subjected to a damages suit because of the Union's alleged misconduct. In view of the fact that petitioners have an action for damages against the Union, see *Czosek* v. *O'Mara,* 397 U. S. 25 (1970), this additional remedy against the employer seems both undesirable and unnecessary.

For the reasons stated I would affirm the judgment of the Court of Appeals.