353 So.2d 986 (1977)
Maureen MORRIS
v.
Joseph GERACE, Administrator of the Dept. of Employment Security and Morton Salt Co.
No. 60021.
Supreme Court of Louisiana.
December 19, 1977.
Rehearing Denied January 27, 1978.
J. Minos Simon, J. Minos Simon, Ltd., Lafayette, for plaintiff-applicant.
Joseph Onebane, Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Lafayette, for defendant-respondent.
CALOGERO, Justice.
Plaintiff, president of Local 29 of the International Chemical Workers Union and a discharged employee of Morton Salt Company, where she was also the union's shop steward, sought unemployment compensation following her discharge from employment.
Based upon a finding by an Appeals referee that her discharge was for misconduct, a disqualification for benefits under the Louisiana Employment Act, R.S. 23:1601(2),[1] she has successively been denied unemployment compensation benefits by the Louisiana Department of Employment Security, the Board of Review for that department, the Sixteenth Judicial District Court, Parish of Iberia, and the Court of Appeal, Third Circuit.
We granted writs upon relator's timely application, which cited two specifications of error, one protesting impingement upon first and fourteenth amendment rights, the other complaining that her conduct in question was not misconduct as contemplated by R.S. 23:1601(2) and as construed in the case law of this state.
*987 We pretermit consideration of the former, and finding merit in the latter assignment, we reverse the judgment below.
The facts are not in dispute.[2] They are set out in the Court of Appeal opinion, 345 So.2d 538 (La.App. 3d Cir. 1977).
Briefly related, those facts are:
1) Management at the Morton Salt Company (a division of Morton-Norwich Products, Inc.) at Weeks Island, Louisiana had become concerned about fights which had been taking place between employees on plant premises.
2) The company posted a memorandum on a number of bulletin boards located at various locations at the plant notifying its employees that henceforth, rather than a one day disciplinary lay-off, participants in a fight would be subjected to much more severe disciplinary action, up to and including discharge from employment.
3) Plaintiff, acting as president of the Local and protesting that this notice of change in company policy was not authorized by the Collective Bargaining Agreement, initiated a grievance procedure under that agreement.
4) With such grievance in arbitration and unresolved, plaintiff, after procuring the advice and assistance of the union's attorney, secured a copy of the company notice and typed on the bottom of it a notice of her own[3] over her signature as president of the Local, indicating that she rejected the company's notice as not authorized by the Collective Bargaining Agreement. She expressed that the union members were not bound thereby and she suggested that anyone so disciplined report the matter to her.[4]
5) While off duty (at the time she normally worked the day shift) she procured the consent of the company's night mill superintendent[5] and posted on various bulletin boards alongside the company notices copies of the instrument she had prepared.
6) The following morning the plant manager asked her to remove her notice. She refused. Several hours later she was called in and suspended.
7) Several days later Morris was called to the plant manager's office and told that she was being discharged from her job for having refused to remove from the company bulletin boards the notices she had placed there.
The Appeals referee found plaintiff's refusal to remove the notices insubordination and a disregard of the employer's interest, concluding that her discharge was for misconduct in connection with employment.
*988 The Board of Review affirmed the decision of the Appeals referee noting that the "Union President should have followed the grievance procedure rather than disregarding orders to remove the notice on the bulletin board."
The district court affirmed the action of the Board of Review for the reasons stated by the Appeals referee.
The Court of Appeal concluded that no error of law had been committed by the district court and relied heavily upon unquestionable insubordination as plaintiff's disqualifying misconduct.
As earlier indicated we do not agree that plaintiff's conduct in refusing personally to physically remove the notice she had placed there in her capacity as union president and shop steward was that character of employee misconduct as is contemplated by R.S. 23:1601(2).
Plaintiff occupied a dual status. On the one hand she was a salaried employee of Morton Salt Company whose job was that of a can line inspector.[6] On the other, she was President and shop steward for Local 29 International Chemical Workers Union. In these positions her status (and that of her union) was legally sanctioned by a duly executed and legally binding Collective Bargaining Agreement.
Plaintiff similarly had dual functions and duties. She was obliged as elected president of the Local to represent her members and her union, oftentimes in opposition to the company, in a wide variety of matters including not only compensation, seniority, holidays and vacations, retirement, insurance, job classification, and wage rates but also company-imposed disciplinary sanctions, as well as grievances associated with all of the foregoing. See 29 U.S.C. 185 et seq.; Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976).
No contention is made here of employment connected misconduct in plaintiff's placing her notice on the bulletin board. Rather she is charged with misconduct in desisting from removing the notice at the request and/or direction of the plant manager.
Since the manager had at his disposal innumerable alternative means of having the notice removed, one appropriate assumption is that his directing plaintiff to remove it was because she, as president of the Local, had placed it there. His directing plaintiff to remove the notices, under this construction, suggests that plaintiff's position as union president rather than as Morton Salt employee earned plaintiff the removal chore.
Misconduct sufficient to disqualify a claimant from receiving unemployment compensation has been consistently defined to mean an act of willful or wanton disregard of the employer's interest; a deliberate violation of the employer's rules; a disregard of standards of behavior which the employer has the right to expect of his employee; or negligence in such degree or recurrence as to manifest culpability, wrongful interest, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligation to the employer. Horns v. Brown, 243 La. 936, 148 So.2d 607 (1963). But in every case the misconduct must be employment related. R.S. 23:1601(2).
Under these circumstances we conclude that plaintiff's conduct in refusing to remove the notices was union related rather than employment connected.
While there are no cases in the jurisprudence directly on point we believe that generally supportive of plaintiff's position herein are such cases as these: Johnson v. Brown, 134 So.2d 388 (La.App. 3rd Cir. 1961) (derogatory remarks about the company made to a supervisor did not constitute serious cause sufficient to deny unemployment compensation); Williams v. Brown, 157 So.2d 237 (La.App. 3rd Cir. 1963) (engaging in a fight not sufficient cause for compensation disqualification); Turner v. Brown, 134 So.2d 384 (La.App. *989 3rd Cir. 1961) (violations by cook of instructions given on a previous day not sufficient misconduct to deny unemployment compensation), and Atkins v. Doyal, 274 So.2d 438 (La.App. 1st. Cir. 1973) (employee's good faith attempt at a meeting to discuss fact that he had been previously cursed by his supervisor did not constitute misconduct within meaning of unemployment statute).
Having concluded that plant manager-union president dispute was not employment connected, rather related to union-management concerns, it is axiomatic that the president's refusal to remove the notices, however else it might be described, could not have been insubordinate as found by the Court of Appeal. Insubordination presupposes inferiority, an appellation not appropriate to plaintiff acting in her role as union president.

Decree
For the foregoing reasons we find that the claimant-appellant is entitled to the unemployment compensation benefits to which she makes claim. The judgment of the Court of Appeal is reversed, and the case is remanded to the Board of Review for further proceedings in accordance with our decision. Plaintiff's employer, Morton Salt Company, is cast for all costs.
REVERSED AND REMANDED.
SUMMERS, J., dissents for the reasons assigned by the Court of Appeal, La.App., 345 So.2d 538.
NOTES
[1] Louisiana Revised Statute 23:1601 provides that an individual shall be disqualified for benefits for specified reasons including the one pertinent here, as specified in section (2): "If the administrator finds that he has been discharged for misconduct connected with his employment."
[2] Louisiana Revised Statute 23:1634 provides in pertinent part: "In any proceeding under this Section the findings of the board of review as to the facts, if supported by sufficient evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the court shall be confined to questions of law."
[3] Morris' notice read as follows:

"LOCAL 29 REJECTS THIS NOTICE AS NOT AUTHORIZED BY THE COLLECTIVE BARGAINING AGREEMENT. UNION MEMBERS ARE NOT BOUND BY THIS. ANY ONE DISCIPLINED ON THIS ACCOUNT IS TO REPORT TO ME IMMEDIATELY!"
[4] She testified at the hearing before the Appeals referee that she posted her notice because she felt that failure to challenge the company's posted policy change could be interpreted as an acquiescence in the policy change in future arbitrations involving the new policy.
[5] In the hearing before the Appeals referee the plant manager acknowledged that there was a standing policy by which the company assented to use of company bulletin boards for the posting of "routine" union notices. Interestingly, the United States Supreme Court in N.L. R.B. v. Magnovox Company of Tennessee, 415 U.S. 322, 325, 94 S.Ct. 1099, 1102, 39 L.Ed.2d 358 (1974), said "[t]he place of work is a place uniquely appropriate for dissemination of views concerning the bargaining representative and the various options open to the employees." In Gale Products, 142 N.L.R.B. 1246, 1249, the National Labor Relations Board stated thusly:

"Their place of work is the one location where employees are brought together on a daily basis. It is the one place where they clearly share common interests and where they traditionally seek to persuade fellow workers in matters affecting their union organizational life and other matters related to their status as employees."
[6] In this position, Ms. Morris earned $3.40 per hour.