CAMPBELL "66" EXPRESS, INC., a corporation, Plaintiff,

v.

Mack RUNDEL, Richard Roe, and John Doe, Individually and as representatives of the class, Defendants.

No. 78–1237C(3).

United States District Court, E. D. Missouri, E. D.

Dec. 14, 1978.

H. Kent Munson, Stein & Seigel, St. Louis, Mo., for plaintiff.

Francis H. Kennedy, Jr., Chopin & Kennedy, P. C., St. Louis, Mo., for defendants.

MEMORANDUM

NANGLE, District Judge.

This matter is before the Court upon plaintiff's motion for a preliminary injunction. Plaintiff brought this suit pursuant to 29 U.S.C. § 185 seeking injunctive and monetary relief against defendants.

A hearing was held on the instant motion at which time the following facts were adduced: plaintiff Campbell "66" Express, Inc. is a corporation organized and existing pursuant to the laws of the state of Missouri. It is engaged in the business of a common carrier of freight by motor vehicle and maintains a truck terminal in the city of St. Louis. Prior to December 13, 1977, defendant Mack Rundel was employed by plaintiff as an over-the-road truck driver. Since April 1, 1976, plaintiff has had a collective bargaining agreement with Teamster's Local 600 with respect to plaintiff's drivers.

On December 13, 1977, plaintiff discharged defendant Rundel for the reason of delaying freight. This resulted from said defendant's failure to complete delivery of freight between two points within the time allotted. Defendant Rundel filed a grievance on December 16, 1977, protesting his discharge. On January 11, 1978, the grievance was heard pursuant to the grievance procedure set forth in the collective bargaining agreement. It was presented by defendant Rundel's union representative; Rundel testified on his own behalf. The six-member counsel of the Missouri-Kansas Grievance Committee denied the grievance.

Thereafter, defendant Rundel filed charges with the National Labor Relations Board, to no avail.

The collective bargaining agreement contains a provision providing that a decision of the Joint State Committee "shall be final and binding on both parties" to the dispute.

The collective bargaining agreement further provides that

> The Union and the Employers agree that there shall be no strike, lockout, tie-up, or legal proceedings without first using all possible means of settlement, as provided for in this Agreement, and in the National Agreement, if applicable, of any controversy which might arise.

Defendant Rundel became associated with PROD, a Teamster reform group, prior to his discharge by plaintiff. Rundel's problem was discussed by some of the members of that group and it was finally decided, in order to help Rundel with his problem, that a picket line would be set up in front of plaintiff's terminal. Rundel asked several people to help picket and Alfred Russom also asked several individuals.

On Monday, November 13, 1978, Rundel and others appeared at plaintiff's terminal and began picketing. The picketing continued until midday on November 14, 1978 when a temporary restraining order was applied for. The picketing was peaceful at all times; there was no violence, no property damage, and no disturbance of the peace. The picket line was not union-authorized. Plaintiff's employees continued to work; trucks from various local cartage companies and other interlining shippers, however, turned away from plaintiff's terminal as a result of the picketing. The signs carried by the picketers referred only to the claim that plaintiff forced drivers to exceed the 55 mile per hour speed limit in order to complete deliveries within the allotted time.[1] The evidence adduced, however, clearly established that the main purpose of the picketing was to pressure plaintiff to reinstate defendant Rundel with back pay. Rundel so stated to a television reporter, to plaintiff's terminal manager and to plaintiff's field safety supervisor. Russom, who was there at Rundel's behest, made a similar statement to plaintiff's terminal manager and field safety supervisor. Moreover, picketers would inform truck drivers approaching plaintiff's terminal that Rundel had been fired and was attempting to get his job back.

This Court concludes that it has jurisdiction herein. 29 U.S.C. § 185; *Hines v. Anchor Motor Freight*, 424 U.S. 554, 562, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976). The Court further concludes that injunctive relief may be granted under the circumstances of this cause. In *Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), the Court held that a court may grant injunctive relief, despite the provisions of the Norris-LaGuardia Act, 29 U.S.C. § 104, in order to enforce a mandatory grievance procedure. In *San Francisco Electrical Contractors Association, Inc. v. International Brotherhood of Electrical Workers, Local No. 6*, 577 F.2d 529 (9th Cir. 1978), the court held that jurisdiction existed to enter injunctive relief to enforce an arbitration award against a union who had called a strike upon the employer's failure to entertain a second grievance on an issue previously decided. The court noted that judicial authority to enforce decisions of arbitrators was clear. *Id.* at 532. See also *Buffalo Forge Co. v. Steelworkers*, 428 U.S. 397, 96 S.Ct. 3141, 49 L.Ed.2d 1022 (1976).

Defendant Rundel, and others acting at his behest, were engaged in picketing for the purpose of seeking Rundel's reinstatement. The arbitration process had determined that Rundel's discharge was proper. To allow this picketing would only serve to undermine the agreed-upon arbitration process in contradiction to Congressional mandate. See 29 U.S.C. § 173(d) (declaring "[f]inal adjustment by a method agreed upon by the parties . . . to be the desirable method for settlement of grievance disputes . . ."). Rundel agreed to abide by the decision of the Committee and can not now escape such obligation. The fact that this picketing was not union-authorized does not alter the Court's conclusion. Defendant Rundel was bound by the result of the grievance procedure, as well as his union representative. The dis-

---

1. Some signs, however, did make reference to the claim that Rundel was discharged because he obeyed the speed limit. See plaintiff's exhibits 15, 16, 20, and 23 herein.

**510**

ruption of the arbitration process that would result where individuals, without union authorization, picket an employer in an attempt to override an arbitration decision, presents as grave a threat to the finality of the arbitration process as would union-supported picketing. Accordingly, the Court concludes that injunctive relief is appropriate to restrain picketing by individuals where the purpose is to override a final arbitration decision.

The record herein establishes a clear showing on the part of plaintiff of probable success on the merits and irreparable injury. Accordingly, the Court concludes that plaintiff's motion for a preliminary injunction should be granted. Rule 65, Federal Rules of Civil Procedure; *Checker Motors Corporation v. Chrysler Corporation,* 405 F.2d 319 (2d Cir. 1969).