Argued and submitted October 24, 1994, affirmed February 22, 1995

# INTERNATIONAL LONGSHOREMEN'S AND WAREHOUSEMEN'S UNION LOCAL 8,
*Appellant,*

*v.*

# PACIFIC MARITIME ASSOCIATION,
*Respondent.*

(9204-02870; CA A81066)

889 P2d 1358

Kevin Keaney argued the cause for appellant. With him on the briefs was Pozzi Wilson & Atchison.

Jill Goldsmith Dinse argued the cause for respondent. With her on the brief was Lane Powell Spears Lubersky.

Before Deits, Presiding Judge, and Riggs and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

Plaintiff, a Portland-area local of the International Longshoremen's and Warehousemen's Union (ILWU), appeals from summary judgment against its action for breach of a sublease agreement. Plaintiff asserts, principally, that the trial court erred in determining that section 301 of the Labor Management Relations Act, 29 USC § 185(a), barred its action. We affirm.

The material facts are undisputed. Plaintiff ILWU Local 8 is the exclusive collective bargaining representative for longshore workers in Portland. Defendant Pacific Maritime Association (PMA), an association of American flag operators, foreign line operators, and terminal and stevedoring companies on the Pacific coast, represents its member companies in labor negotiations with plaintiff.

Plaintiff and defendant are parties to a collective bargaining agreement, the ILWU-PMA Pacific Coast Longshore Contract Document (PCLCD). Section 17 of the PCLCD requires plaintiff and defendant to form the Joint Portland Longshore Labor Relations Committee. The Joint Committee, which is comprised of an equal number of labor and management representatives, controls work assignments and acts as a forum for dispute resolution.

Section 8.11 of the PCLCD requires the Joint Committee to operate a dispatch hall, which assigns longshore workers to jobs at defendant's member companies. At all relevant times, an addendum to the PCLCD required defendant to pay "85% of all jointly agreed-to dispatch hall expenses." In 1981, the Port of Portland agreed to build and lease a building to plaintiff for use as a union hall. Because the proposed building was bigger than necessary to conduct union business, Local 8 proposed that the Joint Committee sublease a portion of the premises as the dispatch hall. Defendant, which would bear the 85% lion's share of any Joint Committee sublease expenses, responded with a counter-proposal.

During four special meetings of the Joint Committee, beginning in May 1981, representatives of Local 8 and the PMA negotiated the terms by which the Joint Committee would sublease the space necessary for the dispatch hall.

During the March 3, 1982, special meeting of the Joint Committee, the parties agreed on the final lease terms: (1) the Joint Committee would sublease 4,500 square feet, which was one-third of the total building space; (2) the total rent on the sublease would equal $46,666 per year, which was one-third of plaintiff's total rental cost; (3) under the PCLCD's allocation formula, defendant would be responsible for 85% ($39,999) of the Joint Committee's annual rent obligation; and (4) at the end of five years, the parties would negotiate a new lease.

Those terms were memorialized in the minutes of the March 3, 1982, special meeting. The minutes note that, "[a]fter caucusing the Union approved the Employer's approach and agreed to accept the last proposal." The minutes were executed by three labor representatives "For the Union" and three management representatives "For the Employers."[1]

In December 1982, a dispute arose over the proper apportionment of dispatch hall costs. Plaintiff contended that the Joint Committee's obligation to pay one-third of the utility costs for the whole building did not adequately cover the actual costs incurred by dispatch hall operations. At a special meeting of the Joint Committee, union representatives proposed a study to determine the actual cost of running the dispatch hall. The PMA rejected that proposal, and Local 8, invoking sections 8.11 and 17 of the PCLCD,[2] submitted the issue to the area arbitrator. The arbitrator subsequently ruled in PMA's favor.

---

[1] Although plaintiff agreed to draft a formal written lease agreement, it failed to do so. Consequently, both parties consider the minutes of the March 3, 1982, special meeting as the embodiment of the lease agreement.

[2] Section 8.11 provides:

"The dispatching of all longshoremen shall be through halls maintained and operated jointly by the International Longshoremen's & Warehousemen's Union and the Pacific Maritime Association in accordance with the provisions of Section 17 * * *."

Section 17 establishes the grievance procedure, and section 17.25, in particular, provides:

"In the event that the Employer and Union members of any Joint Area Labor Relations Committee fail to agree on any question before it, such question shall be immediately referred at the request of either party to the Area Arbitrator for hearing and decision, and the decision of the Area Arbitrator shall be final and conclusive * * *."

In 1986, the stage was set for this case when the Port of Portland reduced plaintiff's total rent for the union hall. Plaintiff did not inform defendant of that reduction and, instead, simply continued to accept defendant's $39,999 yearly contribution toward the dispatch hall sublease. In 1991, the Port again reduced plaintiff's rent, and plaintiff, once again, did not inform defendant of the rent reduction.

In January 1992, defendant discovered that the Port had reduced plaintiff's rent and informed plaintiff that it considered the rent for the dispatch hall — and, consequently, its 85% contribution — correspondingly reduced. Defendant contended that the dispatch hall rent was not a fixed amount, but one-third of the cost of renting the union hall. Based on the lower union hall rent, defendant reasoned that the total dispatch hall rent was no longer $46,666, but $26,679. Consequently, defendant concluded that its 85% contribution was no longer $39,666, but $22,677.97, and began limiting its sublease contributions to that amount. Defendant further asserted that it had overpaid plaintiff for the years following the union hall rent reductions and that such overpayments should be credited toward defendant's sublease contribution.

When plaintiff refused to accept a reduction of the dispatch hall rent, defendant notified plaintiff of its intent to submit the matter to the area arbitrator pursuant to sections 8.11 and 17 of the PCLCD. However, before the matter could be arbitrated, plaintiff filed an action in Multnomah County Circuit Court, alleging that defendant had breached the sublease. The arbitration proceeded, and in June 1992, the arbitrator ruled in defendant's favor.

After the area arbitrator's decision, the parties agreed to abate the circuit court proceedings while plaintiff attempted to appeal that decision to the coast arbitrator pursuant to the PCLCD. Plaintiff could not, however, secure review and subsequently revived this action. Defendant then moved for summary judgment, arguing that section 301 of the Labor Management Relations Act (LMRA), 29 USC § 185(a), barred plaintiff's action. Plaintiff moved to strike defendant's motion, asserting that the basis of that motion was beyond the scope of the pleadings, because defendant's answer did not plead federal preemption as an affirmative defense. Plaintiff also filed its own cross-motion for summary

judgment. Thereafter, and before the hearing on the summary judgment motions, defendant moved to amend its answer to allege preemption.

The court granted defendant's motion to amend and granted defendant's motion for summary judgment:

> "[T]he lease is at best an agreement between the plaintiff union and the Joint Port Labor Relations Committee (JPLRC), rather than with the defendant. In order to trace the liability of the defendant in this litigation to the obligations of the JPLRC, an unincorporated entity whose very existence depends upon the collective bargaining agreement, it is unavoidable that the analysis must enter the realm of collective bargaining agreements, labor relations law, and the 'common law of the shop' whose domain is reserved to federal law by 29 USC § 185(a) [LMRA § 301].

> "Accordingly, I must agree with the defendant that plaintiffs cannot pursue their state law claim in the face of the arbitration result which is final as a matter of federal law and the collective bargaining agreement."[3]

■ Plaintiff first argues that the trial court erred in concluding that section 301 of the LMRA barred its action for breach of sublease. In resolving that argument, we must determine two subsidiary questions. First, does federal law, through section 301, govern plaintiff's action? Second, if so, does federal labor law compel dismissal when the underlying dispute has been arbitrated pursuant to the parties' collective bargaining agreement?

Section 301 provides:

> "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties." 29 USC § 185(a) (1988).

In *Coulter v. Construction and General Laborers Union*, 107 Or App 522, 525, 812 P2d 850 (1991), we described the operation of that statute:

---

[3] The court concurrently denied plaintiff's cross-motion for summary judgment.

"It authorizes federal courts to fashion a body of federal common law to address disputes arising out of labor contracts. Providing that federal law, not state law, will be used to adjudicate labor claims assures uniformity in labor law. The interest in uniformity may preempt a state law claim, even though a party alleges a state tort action instead of a violation of a collective bargaining agreement. However, not every claim which tangentially involves an agreement is preempted. The test is whether the resolution of the claim is 'substantially dependent upon analysis of the terms of an agreement made between the parties.' " (Citations omitted).

*See also Ramirez v. Fox Television Station, Inc.*, 998 F2d 743, 748 (9th Cir 1993) (state law claim preempted by section 301 if its resolution depends on meaning of collective bargaining agreement).

Plaintiff argues that section 301 does not apply to its breach of sublease claim against defendant because its claim "does not require the construction or interpretation of the collective-bargaining agreement and * * * exist[s] independently of the agreement." In particular, plaintiff points out that the PCLCD does not include provisions requiring and governing a landlord-tenant relationship between plaintiff and defendant. Plaintiff reasons that, because the PCLCD does not address such landlord-tenant relations, a claim for breach of the dispatch hall lease does not materially implicate the collective bargaining agreement. We disagree.

The resolution of plaintiff's claim "substantially depend[s] upon analysis" of the express terms of the PCLCD. *Coulter v. Construction and General Laborers Union, supra,* 107 Or App at 525. Although plaintiff styles its claim as an action for the breach of a lease agreement, it is actually a dispute regarding the proper allocation of dispatch hall costs between a union and an employers' association. Particularly telling is the fact that Local 8 sued *PMA, and not the Joint Committee*, the true tenant on the sublease. Indeed, PMA's alleged liability for insufficient contribution to dispatch hall rental depends, ultimately, on the PCLCD's requirement that PMA pay "85% of all jointly agreed-to dispatch hall expenses."

In addition, plaintiff's pleadings implicate the implied terms of the collective bargaining agreement—the

"common law of the shop" — established through a ten-year course of dealing in the context of the Joint Committee. A collective bargaining agreement consists of more than its express terms:

> "It is more than a contract; it is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate. The collective bargaining agreement covers the whole employment relationship. It calls into being a new common law — the common law of a particular industry or of a particular plant." *United Steelwkrs. Of Am. v. Warrior & GulfN. Co.*, 363 US 574, 578-79, 80 S Ct 1347, 4 L Ed 2d 1409 (1960).

The parties established the dispatch hall sublease through negotiations conducted within the Joint Committee framework. Indeed, no formal lease agreement exists; instead, the parties have treated the Joint Committee minutes as the embodiment of the lease terms. As problems regarding the dispatch hall sublease have arisen, the parties have attempted to resolve them through negotiation in the context of the Joint Committee, resorting to arbitration as mandated by the PCLCD when negotiations failed. Thus, the resolution of the sublease dispute depends on an analysis not only of the express provisions of the PCLCD, but also of the parties' understanding of those provisions as shaped by prior dealings.

This is, in short, precisely the sort of dispute that is subject to LMRA, section 301. Accordingly, federal law controls.

■■ Under federal labor law, as enforced through section 301, courts must defer to grievance procedures established pursuant to collective bargaining agreements. *See Hines v. Anchor Motor Freight, Inc.*, 424 US 554, 562, 96 S Ct 1048, 47 L Ed 2d 231 (1976); *see also Allis-Chalmers Corp. v. Lueck*, 471 US 202, 219, 105 S Ct 1904, 85 L Ed 2d 206 (1985). Absent extraordinary circumstances, the results of such grievance procedures, including arbitration awards, are final and binding. *Hines v. Anchor Motor Freight, Inc., supra*, 424 US at 562-63; *United Steelwkrs. of A. v. Enterprise W. & C. Corp.*, 363 US 593, 597-99, 80 S Ct 1358, 4 L Ed 2d 1424 (1960). Here, the sublease dispute was arbitrated pursuant to the process prescribed by the PCLCD, and plaintiff does not

contend that any of the extraordinary circumstances identified under federal law compel reexamination of that award. Accordingly, the trial court properly granted defendant's motion for summary judgment.

We have considered and reject, without further comment, plaintiff's remaining assignments of error.

Affirmed.