Howard H. RHOADES

v.

The BOOK PRESS, a Division of General Educational Services Corporation, and Graphic Arts International Union, Local 109-B.

Civ. A. No. 75-238.

United States District Court, D. Vermont.

Sept. 29, 1978.

Crispe & Crispe, Brattleboro, Vt., for plaintiff.

Kristensen, Cummings & Price, Brattleboro, Vt., for The Book Press.

Timothy J. O'Connor, Jr., Brattleboro, Vt., for Graphic Arts.

## MEMORANDUM OF DECISION

HOLDEN, Chief Judge.

The plaintiff Howard H. Rhoades of Bellows Falls, Vermont, commenced this action against his former employer, The Book Press, a division of General Educational Services Corporation with an operating plant in Brattleboro, Vermont. The plaintiff has joined as an additional defendant his former union representative at the Brattleboro plant, Graphic Arts International Union, Local 109–B (the Union). He seeks relief under the provisions of Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621–634. Jurisdiction is invoked by way of 29 U.S.C. §§ 216(b) and 626(b)(c).

After withstanding the defendant Union's motion to dismiss, the plaintiff was granted leave to amend his complaint to add two further counts. The additional counts charge the Union, singly and in combination with the employer Book Press, with violating its duty of fair representation of the plaintiff under the Labor Management Relations Act, 29 U.S.C. §§ 141–187.

Trial was by the court without a jury. Upon consideration of the evidence presented, the court finds the following facts.

## FINDINGS OF FACT

The plaintiff commenced employment by the defendant Book Press on September 1, 1972 at the age of 54. Book Press is a book bindery that maintains an operating plant at Brattleboro where it is engaged in the production, sale and distribution of books in interstate commerce. The defendant local union is a labor organization that is the recognized collective bargaining agent of certain employees which included the plaintiff at the time of employment.

At the time of hiring the plaintiff prepared an application for employment. On the printed form there appeared the question—"Do you have any physical limitations?" The plaintiff responded in writing: "Slight Back Trouble. Cannot do some types of lifting." This response developed from an injury sustained by the plaintiff in a fall in 1958, which resulted in the diagnosis of a slipped disc.

On November 1, 1972 the plaintiff became a member of Graphic Arts International Union, Local 109–B, effective as of the commencement of his employment in the category of "shipper, packer." At that time he was provided with a printed copy of the collective bargaining agreement of the defendants Book Press and the Union.[1] His employment was without incident until January 1975. The seeds of the present controversy became implanted at that time when the floor supervisor for the first shift at the

[1] The collective bargaining agreement was admitted into evidence as Plaintiff's Exhibit 3, entitled "Agreement between THE BOOK PRESS, a division of General Education Services Corp., and GRAPHIC ARTS INTERNATIONAL UNION LOCAL 109–B"; the agreement was effective July 1, 1972 and expired June 30, 1975.

Book Press asked him to help load cartons of books, about ten feet in length, into containers for shipping. This was not in the usual course of Mr. Rhoades' duty assignment as a "shipper, packer." The plaintiff informed his supervisor that he had back problems. The supervisor told him that a younger man should have been given the job. Rhoades refused to assist with this work and reported the incident to the Union Local's president, Mrs. Beryl Brown. Mrs. Brown supported the plaintiff's refusal. Two or three days later the plaintiff was assigned to lighter work, replacing a fellow employee Wisell who was transferred to the "dock" as a tow motor operator.

Rhoades testified that after this disposition was made, the shipping boss said to him: "I'm going to get you for this . . ." Nonetheless, the plaintiff continued in the shipping department until April 17, 1975.

At that time there was an overall reduction in work orders at the Book Press plant. Wisell's job on the dock was eliminated in a series of layoffs. Under the bargaining agreement, part-time and probationary employees were laid off first. Seven employees in the shipping department, with less seniority than Rhoades, were not subjected to the layoff. Wisell elected to exercise his seniority rights by claiming his former job, then held by the plaintiff.[2] Although the plaintiff knew he had the privilege of claiming the job of an employee with less seniority in his department, he did not exercise this right. He testified he thought a more favorable assignment on the second shift would open up to his liking.

Although the plaintiff testified a Union representative, Royal Bonnette, reported to him that a person in management, Kinzel, wanted to unload some of the older help, the evidence does not support the hearsay. Bonnette denied making the statement and disclaimed any conversation with Kinzel. Seventy employees of Book Press were laid off, including the plaintiff. Of these, the majority were under the age of 40. As of this date, Book Press had ninety-six employees in its plant at Brattleboro who were older in years than the plaintiff. Within the shipping department 23% were more advanced in age than the plaintiff.

On April 30 Book Press recalled 37 employees who were then out on layoff. Recall is according to seniority. The plaintiff was notified by certified mail that he was to return to work May 5, 1978. The plaintiff knew the requirement of the job of "padlocker" to which he was recalled. He was prepared to accept it, but was concerned that it might require too much lifting. For that reason he called Mrs. Brown, the president of the Local, on May 1. He asked her if he had to take the job. Mrs. Brown answered yes and pointed out to the plaintiff that unless he reported for work after recall, his employment would be forfeited with loss of seniority and other benefits under the bargaining agreement.

The plaintiff did not request the Union president to pursue any grievance procedure in his behalf, nor did he solicit Union help to aid in restoring him to his former job assignment. The plaintiff did not call upon the Union official to explain the grievance procedure available to him; no explanation was offered.

The plaintiff then turned to the chief personnel officer with Book Press. He confirmed what Mrs. Brown had previously told the plaintiff, to the effect that under

---

**2.** Article XX of the collective bargaining agreement governs layoffs, recalls and seniority. Section 3(C)(3) reads as follows:

3. In the event of a decrease in work force, all part time and probationary Employees will be discharged first and re-called last.

A regular Journeyman or Journeywoman employee laid off shall have the right to claim other work being performed by an employee of lower seniority standing provided he or she is competent to perform the job in question in its entirety.

For employees in non Journeymen and Journeywoman categories upon layoff they shall have the right to claim the work being performed by an employee of a lower seniority standing providing the senior employee has previously performed satisfactorily the work required of the Junior employee's job or the Junior employee's job requires no training. If the employee after claiming another situation proves incompetent he or she will be terminated.

the bargaining agreement, failure to report within 72 hours of recall would result in forfeiture of his employment.

Rhoades returned to work as a padlocker without exercising his option to take the job of a junior employee. On Thursday of the week of his return, the plaintiff notified his supervisor that he would have to terminate his employment. The plaintiff's decision to quit was made on the advice of his physician.

In the instance of another employee, Mrs. Pauline Myers, who was recalled to work she couldn't perform, the Local Union official advised the worker to file a grievance within 72 hours. The Union took the grievance to management with a medical certificate and the employee was reassigned. In another case the employee, Leon Lynch, was advised by Mrs. Brown to resist reassignment by resorting to grievance procedures. The Union was not similarly consulted by the plaintiff, nor was the plaintiff offered assistance by the Union in his predicament.

After the plaintiff terminated his employment with Book Press he obtained temporary and irregular work in various opportunities in the Brattleboro area which produced a total income of $11,794.00 from May 9, 1975 to May 1, 1978. Had he continued his employment with Book Press, with regular increases over the period, he would have derived gross earnings of $21,695.63. On May 1, 1978 the plaintiff suffered a heart attack and became disabled from further employment.

## CONCLUSIONS

*Age Discrimination in Employment*

The statute which forms the basis for the plaintiff's claim of discrimination, by reason of age, provides in 29 U.S.C. § 623:

*Employer practices—*

(a) It shall be unlawful for an employer—

(1) to fail to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or

privileges of employment, because of such individual's age;

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; or

(3) to reduce the wage rate of any employee in order to comply with this chapter.

■ Applying the teaching of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) as applied to racial discrimination in hiring under the Civil Rights Act of 1964, to establish a *prima facie* case of discrimination because of age, the plaintiff was called upon to establish (1) that he was a member of the protected group, (2) he was discharged or discriminatory conditions of employment were imposed, (3) that he was replaced by a person outside the protected group and (4) he was qualified for the job. *Price v. Maryland Casualty,* 561 F.2d 609, 612 (5th Cir. 1977).

■ Given the fact that the plaintiff's age of 56 at the time of termination brings him within the group protected by the Act, his proof fails to establish that he was discharged. The evidence is that he voluntarily terminated his employment because he experienced back pain. There is no showing that age discrimination was a factor in the recall to the padlocker assignment, rather than to his former work assignment in the shipping department. The evidence is conclusive that his former job was not open; it was held by an employee senior to the plaintiff, who had exercised his right to claim the job under the bargaining agreement. The only fragment of evidence that the Book Press harbored any discriminatory policy against older employees was that of a second-hand assertion attributed to management in a conversation between the plaintiff and a Union official, with no representative of the company present. The Union official denied that the statement was made and there was no communication

with the plaintiff to this effect. Moreover, the employment statistics presented, in the defendant's case refute the claim. In sum, the plaintiff's evidence does not sustain the allegations made against the defendants in Count I of the complaint.

### Claim of Unfair Representation Under Labor Management Relations Act

There remains the plaintiff's claim under Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, of unfair representation by the Union as a result of the combined conduct on the part of both defendants which culminated in his termination. In essence, the plaintiff complains that both management and the Union knew the plaintiff was physically unable to perform strenuous work assignment and that their insistence that he do so caused him to relinquish his job.

The claim is met at the outset by the defendants' contention that the plaintiff failed to exhaust the grievance procedure available to him under the collective bargaining agreement.[3] The plaintiff counters with the contention that his resort to the grievance and arbitration procedures provided in the collective bargaining agreement was interdicted by the joint represen-

tation of the Union official, Mrs. Brown, and the defendants' personnel officer, that the plaintiff had no alternative but to accept the job assignment to which he was recalled in May 1975.

■ A wrongfully discharged employee may maintain an action against his employer and the union "in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance." *Vaca v. Sipes,* 386 U.S. 171, 186, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967), (White, J.).

A breach of the statutory duty of fair representation occurs only when a union's conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith.

*Id.* at 190, 87 S.Ct. at 916.

The union's breach of duty relieves the employee of an express or implied requirement that disputes be settled through contractual grievance procedures; if it seriously undermines the integrity of the arbitral process the union's breach also removed the bar of the finality provisions of the contract.

---

**3.** Article XXIV of the collective bargaining agreement is entitled "Grievances and Arbitration." This article states:

It is agreed by both parties that the spirit of this agreement makes it mutually obligatory whenever any differences of opinion as to the rights of the parties under this agreement shall arise, or whenever any dispute as to the construction of the agreement or any of its provisions takes place, to appeal at once to the authority duly constituted by this agreement, as provided below.

(A) All grievances must be presented to the Shop Steward in writing within 72 hours.

(B) A conference shall be held between the Shop Steward representing the employee and employer or his representative within 72 hours. Should this fail to settle the matter, then;

(C) By conference between the grievance committee consisting of not more than two (2) members appointed by the Company and not more than two (2) members appointed by the union.

(D) If any grievance concerning the performance of any party or its members of its undertakings hereunder, or the interpretation

of the terms of this Agreement, shall not be settled satisfactorily by the procedure outlined above, the matter shall be referred to a Board of Arbitrators upon demand made by either the Union or the Company to the other, within ten (10) days after the conference between their committees.

The Board of Arbitration shall consist of five members, two of whom shall be chosen by the Union, two by the Company, and the fifth member shall be chosen by the other four from a panel of arbitrators submitted by the Federal Mediation and Conciliation Service. The representatives of the Company and the Union shall each have the right to alternately strike the names from the list, and the fifth member of the Board shall automatically be the person remaining on said list. The fifth member shall act as Chairman. He shall be entitled to a voice and vote on all questions. He shall not be a member of the Union nor of the Company. This Board shall not have authority to create new conditions or add new provisions to this agreement. Management and Union shall share the expenses for the arbitrator.

*Hines v. Anchor Motor Freight,* 424 U.S. 554, 567, 96 S.Ct. 1048, 1058, 47 L.Ed.2d 231 (1976), (White, J.).

As in *Vaca,* our concern is with the failure of the Union to process a grievance. But unlike the employee's posture here, the procedure under the contract was invoked and the claim of wrongful discharge was actively pressed by the aggrieved employee.

In any event the employee—

must *attempt* use of the contract grievance procedure agreed upon by employer and union as the mode of redress. If the union refuses to press or only perfunctorily presses the individual's claim, differences may arise as to the forms of redress then available. But unless the contract provides otherwise, there can be no doubt that the employee must afford the union the opportunity to act on his behalf. (Emphasis in the text. Citations and footnotes omitted).

*Republic Steel Corp. v. Maddox,* 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965), (Harlan, J.).

It is abundantly clear from the evidence presented at the trial that the plaintiff was furnished a copy of the collective bargaining agreement at the time he became a member of Local 109. He was conversant with his right to preempt the job of a fellow employee, junior to him in point of service. He had experienced the operation of this provision of the contract when he was "bumped" by Wisell. The proof establishes that he was generally conversant with the grievance procedures. Such was his testimony on cross-examination. He was interested in Union affairs and irregularly attended local meetings. He informed the Union representative at the time of his termination that he "was quitting on doctor's order." Yet he made no effort to obtain a medical certificate. During the five day period after his return to the padlocker's assignment he didn't discuss his physical problem with the steward or the Union president, who had previously aided him in a similar predicament the preceding January. When his Union representative explained that he would have to return to work after the layoff, he did not inform her of his back problems. Nor did he solicit her help to obtain assignment to less arduous labor. When Mrs. Brown learned that the plaintiff had terminated his employment, she took the pains to inquire of the chief steward if the plaintiff complained. She learned no complaints had been presented; —only that he had quit on short notice.

The total record fails to excuse the plaintiff's failure to resort to the grievance and arbitration procedures afforded under the bargaining agreement. And if it could be said that adequate justification was present, the evidence fails to establish any conspiracy between the defendants to discriminate against the plaintiff by reason of his age.

The Local Union had broad authority in administering its bargaining agreement with Book Press. *Humphrey v. Moore,* 375 U.S. 335, 342, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964). As the plaintiff's bargaining representative with his employer, Local 109 was called upon to perform its duties under the contract in complete "good faith and honesty of purpose." *Ford Motor Co. v. Huffman,* 345 U.S. 330, 338, 73 S.Ct. 681, 686, 97 L.Ed. 1048 (1953). The fabric of the proof fails to produce any evidence of bad faith, discriminatory conduct or dishonesty of purpose within the teaching of *Hines v. Anchor Motor Freight, supra.* And while a bargaining representative is held to something more than perfunctory processing of an employee's grievance, *Vaca v. Sipes, supra,* 386 U.S. at 194, 87 S.Ct. 903, in the present case no grievance was asserted; the Union was not called upon to process the worker's complaint. No breach of duty of fair representation has been established.

Accordingly, the Clerk is directed to enter judgment for the defendants without taxing their costs. It is so ORDERED.