**Roni K. DOGHERRA, Plaintiff,**

v.

**SAFEWAY STORES, INC., a California Corporation, Defendant.**

**No. C-77-2889 SW (SJ).**

United States District Court, N. D. California.

Jan. 22, 1980.

Charles A. Dyer, Cotchett, Dyer & Illston, San Mateo, Cal., Thomas A. Black, Santa Cruz, Cal., for plaintiff.

Littler, Mendelson, Fastiff & Tichy, A Professional Corp., San Francisco, Cal., for defendant Safeway Stores, Inc.

## ORDER DENYING MOTIONS FOR RECONSIDERATION AND FOR CERTIFICATION OF ISSUE

SPENCER WILLIAMS, District Judge.

This case arises out of an alleged wrongful termination. In previous rulings, and by means of voluntary dismissals, numerous claims and defendants have been dropped from this case. All that remains is a claim against plaintiff's former employer under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, for breach of a collective bargaining agreement.

*BACKGROUND*

Essentially, plaintiff's claim consists of an allegation that, following a permissible and authorized six month medical leave of absence, she was wrongfully terminated by defendant Safeway Stores. The reason given for her termination was that she had not informed the store of her desire to return to work within the requisite time period. Plaintiff, however, has contended all along that she told two management personnel that she wanted to return, a Wayne Clough and an Arthur Martinez. Those two denied ever speaking to her about it.

Following plaintiff's termination, the union initiated grievance proceedings pursuant to the collective bargaining agreement. Before reaching the arbitration stage, however, the union dropped the grievance. As later explained by a union official, they had not been able to confirm a medical release from plaintiff's doctor nor had they been able to confirm her alleged conversation with Martinez.

Plaintiff also pursued unemployment insurance. At administrative hearings held in connection with her claim, Clough and Martinez testified they had not spoken to her as she alleged. Nevertheless, the agency found that she had been terminated without cause and awarded her benefits. Based on this, it seems, the union sought to reopen plaintiff's grievance proceeding. The employer objected, and the issue of arbitrability—not the merits of plaintiff's grievance—was then arbitrated. Basing his decision on concepts closely akin to the doctrine of laches, the arbitrator found that the grievance had been lost when the union originally dropped it.

Thereafter plaintiff filed this action. The union was named as a defendant but was dismissed pursuant to a stipulation by plaintiff.

On August 10, 1979, the motion of the sole remaining defendant, Safeway Stores, for summary judgment came on for hearing. That motion was based on defendant's contention that, because plaintiff does not allege her union breached its duty of fair representation, she is bound by the arbitration award previously issued in defendant's favor and this court has no jurisdiction to consider her breach of contract claim. The motion was denied. Defendant has now moved for reconsideration of that ruling or, in the alternative, for certification of the issue for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). For the reasons given below, both motions are denied.

## THE MOTION FOR RECONSIDERATION

Congress historically has placed great emphasis on grievance procedures provided in collective bargaining agreements as the preferred means of resolving contract disputes. The Supreme Court has acknowledged this legislative intent in cases such as *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 562–63, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976), and *Steelworkers v. American Manufacturing Co.*, 363 U.S. 564, 566, 569, 80 S.Ct. 1343, 1347, 4 L.Ed.2d 1403 (1960). Plaintiff argued at the August 10, 1979 hearing, however, that the arbitration award against her does not bar the present

action because it was the product of employer wrongdoing. The alleged factual basis for this charge is contained in deposition testimony given by Arthur Martinez on May 25 and August 1, 1978. Martinez admitted that he had been lying throughout the administrative and grievance proceedings, and he now claims that plaintiff did in fact speak with him and Clough concerning reinstatement within the required time period. The union investigator is one of the persons to whom Martinez claims he lied. As the arbitrator himself observed in ruling that the union had delayed too long in pressing plaintiff's grievance, a major factor underlying the union's decision to drop the grievance originally was its inability to verify plaintiff's claim that she had spoken with Martinez and Clough. Neither the arbitrator nor the union representatives themselves could have known at the time of the arbitration hearing that Martinez would later admit to lying to union investigators. Inasmuch as the arbitrator's decision was based on equitable considerations, plaintiff argued that he would not have ruled the union delayed too long in advancing her grievance had he determined that willful falsehoods by management personnel were responsible for that delay. In any event, plaintiff contended the actions of the employer's agent undermined the integrity of the contractual grievance procedures to such an extent that the arbitration award should not bar her from challenging her discharge in this court.

Defendant replied to plaintiff's arguments by contending that Martinez's claimed lie was irrelevant: plaintiff must, in defendant's opinion, still allege and prove the union breached its statutory duty of fair representation before the arbitration award in favor of the employer may be disregarded. Defendant's position, therefore, was that this court was deprived of jurisdiction over plaintiff's breach of contract claim against her employer when she agreed to have the union, which was once named a defendant in this action, dismissed.

■ At the August 10, 1979 hearing the court ruled in favor of plaintiff, accepting

her argument that the employer may not invoke the bar of finality when its misconduct has interfered with the proper operation of the contractual grievance processes. Defendant's motion for reconsideration is based on a recent Ninth Circuit opinion, *Ness v. Safeway Stores, Inc.*, 598 F.2d 558 (9th Cir. 1979), which purportedly is contrary to this court's August 10th ruling.[1] In addition to citing *Ness*, defendant now strenuously contends plaintiff had other remedies available to her: (1) a proceeding before the National Labor Relations Board based on a charge of an unfair labor practice, (2) an attempt to persuade her union to reopen the contractual grievance processes, and (3) an action in federal court to vacate the arbitrator's award as one procured by fraud pursuant to section 10 of the Federal Arbitration Act, 9 U.S.C. § 10(a). Even assuming for the sake of argument that these suggested alternative courses were indeed available to plaintiff, defendant·has still failed to cite any authority or offer any persuasive arguments that the availability of such alternative courses precludes or preempts an action by plaintiff under section 301 of the Labor Management Relations Act should such an action in other respects also have been open to her. The basic question for the present case remains whether claiming breach of the union's duty of fair representation is necessary to maintenance of a section 301 breach of contract action against an employer which, allegedly, has tampered with and subverted the contractual grievance processes.

In support of its position that no jurisdiction exists over the section 301 claim, defendant, as noted above, relies heavily on *Ness v. Safeway Stores, Inc.* Plaintiff places particular emphasis on the following language:

> Under 29 U.S.C. § 185, an employee may sue his union for breach of the duty of fair representation. An action for wrongful discharge also lies against the employer under § 185, *but only when the union is found to have breached its duty.*

*Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 . . . (1976); *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 . . . (1967).

598 F.2d at 560 (emphasis supplied). *Ness*, however, did not involve any allegations of employer wrongdoing. It was concerned solely with alleged union wrongdoing. To apply its language to section 301 suits where employer misconduct is alleged to have interfered with the union's ability properly to process an employee's grievance would be an extension of the *Ness* ruling unwarranted both by the facts of that case and by the holdings of the two Supreme Court cases *Ness* cites.

In *Vaca v. Sipes*, for instance, the Supreme Court considered the effect on a section 301 suit of a union's refusal to process a member's grievance. The Court held the failure of a wrongfully discharged employee to exhaust contractual remedies would not bar that employee from suing his former employer for breach of contract in federal court if he proves the union breached its duty of fair representation in the handling of the employee's grievance. 386 U.S. at 186, 87 S.Ct. 903, 914, 17 L.Ed.2d 842. Nowhere, however, did the Court hold that this was the *only* situation in which failure to exhaust contractual remedies would not bar a section 301 suit against the employer. In fact, the Court discussed the issue as follows:

> [B]ecause these contractual remedies have been devised and are often controlled by the union and the employer, they may well prove unsatisfactory or unworkable for the individual grievant. The problem then is to determine under what circumstances the individual employee may obtain judicial review of his breach-of-contract claim despite his failure to secure relief through the contractual remedial procedures.
>
> An obvious situation in which the employee should not be limited to the exclusive remedial procedures established by

---

1. It is perhaps worth noting that the *Ness* case had actually been available for almost two months when last August's hearing was held, as it was issued on June 13, 1979.

the contract occurs when the conduct of the employer amounts to a repudiation of those contractual procedures. Cf. *Drake Bakeries v. Bakery Workers*, 370 U.S. 254, 260–263, 82 S.Ct. 1346, 1350–1352, 8 L.Ed.2d 474. See generally 6A Corbin, Contracts § 1443 (1962). In such a situation (*and there may of course be others*), the employer is estopped by his own conduct to rely on the unexhausted grievance and arbitration procedures as a defense to the employee's cause of action. *Id.* at 185, 87 S.Ct. at 914 (emphasis supplied).[2] Though not a formal repudiation within in the technical meaning given that term by contract law, an employer's lying to union investigators certainly constitutes an *implied repudiation* of the grievance process within the common definition of the word, and such a situation is, in this court's view, one of the "others" to which the *Vaca* Court referred. As the Court in *Vaca* itself observed, a case involving a union's breach of its duty is merely "*another situation* when the employee may seek judicial enforcement of his contractual rights." *Id.* (emphasis supplied). Moreover, the Court acknowledged, "It is true that the employer in such a situation may have done nothing to prevent exhaustion of the exclusive contractual remedies to which he agreed in the collective bargaining agreement." *Id.* at 185, 87 S.Ct. at 914. The clear implication here is that an even stronger case for disregarding the defense of failure to exhaust is presented when the employer interferes with the proper functioning of the contractual grievance procedures.

*Hines v. Anchor Motor Freight, Inc.* is in accord with this reading of the *Vaca* decision. In *Hines* the Court held that an employee is not bound by an adverse arbitral decision resulting from a process which had fundamentally malfunctioned due to union breach of duty. As in *Vaca*, though, the Court in *Hines* does not hold that the union's breach of duty is a necessary prerequi-

site to maintenance of a section 301 action where remedies are provided by contract; it holds only that such a breach is a sufficient basis for disregarding the normal rules of finality applicable to such grievance proceedings. *See* 424 U.S. at 572, 96 S.Ct. at 1060. Also as in *Vaca*, there is language in *Hines* strongly suggesting that employer interference with the grievance procedures is an easier case for disregarding an award in the employer's favor than the case actually considered, that of union misconduct. *See, e. g.,* 424 U.S. at 569, 96 S.Ct. at 1058 ("Anchor would have it that petitioners are foreclosed from judicial relief unless some blameworthy conduct on its part disentitles it to rely on the finality rule."); *id.* at 570, 96 S.Ct. at 1059 ("Under the rule announced by the Court of Appeals, unless the employer is implicated in the Union's malfeasance or has otherwise caused the arbitral process to err, petitioners would have no remedy against Anchor even though they are successful in proving the Union's bad faith, the falsity of the charges against them, and the breach of contract by Anchor by discharging without cause.").

The *Hines* Court concluded, "Congress has put its blessing on private dispute settlement arrangements provided in collective agreements, but it was anticipated, we are sure, that the contractual machinery would operate within some minimum levels of integrity." *Id.* at 571, 96 S.Ct. at 1059. There is nothing in *Hines* to indicate the Court's broad statement regarding the legislature's intent is not equally applicable to the situation in which it is action of the employer—and not that of the union—which "seriously undermines the integrity of the arbitral process." *Id.* at 567, 96 S.Ct. at 1058. None of defendant's authorities are to the contrary. In fact, defendant has failed to come forward with any cases upholding arbitration awards where the employer subverted the grievance process. The logic of *Hines* seems clear and unmis-

---

2. Although much of *Vaca* is dicta, *see* 386 U.S. at 199–202, 87 S.Ct. at 921–923 (Fortas, J., concurring), the Ninth Circuit has indicated that it agrees with *Vaca*'s discussions relating to section 301 actions against employers.

*Clayton v. ITT Gilfallan*, Nos. 77–2756, 77–2763, Slip Op. at 3356 n. 3 (Sept. 4, 1979); *Margetta v. Pam Pam Corp.*, 501 F.2d 179, 180 (9th Cir. 1974).

takable, and, what is more, it is consistent with common sense. An artful liar should not be allowed to succeed in thwarting an employee's attempt to raise a grievance simply because the liar is the employer and not the union. Such a result would be unfair to the employee, contrary to congressional intent, and the utmost foolishness.

Therefore, it is the ruling of this court that if plaintiff proves the alleged lie to union investigators undermined the integrity of the arbitration process and that the liar or liars were agents of defendant, then the arbitrator's decision may be disregarded and plaintiff's breach of contract claim may be heard in this court on the merits. Defendant's motion for reconsideration is denied.

### THE MOTION FOR CERTIFICATION OF ISSUE

Defendant has moved for an order pursuant to 28 U.S.C. § 1292(b) certifying for interlocutory appeal the issue of this court's jurisdiction over plaintiff's section 301 claim. It is not, however, the opinion of this court that this is an issue upon which "a substantial ground for difference of opinion" exists, nor does it appear that an "immediate appeal . . . may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). The ultimate resolution of this dispute will be served best by proceeding with trial as presently scheduled. Defendant's motion for certification of issue is denied.

IT IS SO ORDERED.