**AMERICAN BROADCASTING COMPANIES, INC. and ABC Sports, Inc., Plaintiffs,**

v.

**Muhammad ALI, Defendant.**

**No. 80 Civ. 1164(MP).**

United States District Court,
S. D. New York.

April 28, 1980.

**124**

Graubard, Moskovitz, McGoldrick, Dannett & Horowitz, New York City, for plaintiffs by Emanuel Dannett, John A. Young, Jay C. Cooke, New York City.

Freeman, Meade, Wasserman & Schneider, New York City, for defendant by Melvyn Freeman, New York City.

## DECISION

MILTON POLLACK, District Judge.

American Broadcasting Companies, Inc. and ABC Sports, Inc. ("ABC") have brought suit against Muhammad Ali ("Ali") to set aside a labor arbitration Award in favor of Ali and against ABC and Ali has cross-petitioned for confirmation of the Award and entry of judgment thereon in his favor.

In its complaint framed under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185 (1976) ("LMRA" hereafter) ABC challenges the Award as unsupported by factual evidence; as reached on faulty legal conclusions; and as an Award of unsupported damages under the code governing the relations of the parties.

A careful review of the record fails to support a cognizable challenge to the Award and ABC's suit must accordingly be dismissed and the Award will be confirmed as supported in fact and law.

ABC is signatory to a collective bargaining contract with a labor organization, The American Federation of Television and Radio Artists ("AFTRA") in which Ali is a member in good standing. A very broad agreement to arbitrate all disputes with any member of the organization in relation to any matter covered by contract is obligatory on ABC. It is provided therein that the disputants shall be governed by the terms of the so-called AFTRA 1973–1976 National Code of Fair Practice for Network Television Broadcasting (the "AFTRA Code") which sets forth in detail the terms, rates and conditions of employment for those who perform on television. Paragraph 75 of the AFTRA Code provides that "This Code also applies to all . . . commentators or analysts or persons who criticize, review and/or comment on . . sports;" and "This Code also applies to professional performers appearing as interviewees on entertainment programs. . ."

On March 28, 1975 Ali was interviewed on video-tape by ABC as a commentator on an ABC show to be publicly broadcast on the next day. The interview was conducted by Howard Cosell of ABC and related to the Ali-Wepner heavyweight championship fight held on March 24, 1975. Ali received $5,000 from ABC for his appearance. The fight had been a controversial one and Ali was critical of the performance of Anthony Perez, as the referee of the event. Perez and Ali had exchanged derogatory remarks after the contest concerning each other's performance and alleged professional lapses of the other and Cosell pursued this subject matter vigorously and provocatively in the taped interview. The tape was broadcast with certain matter deleted therefrom by ABC and the broadcast promptly precipitated a libel action by Perez against ABC in state court. Ten days later Perez commenced a libel action in this Court against Ali focused on the broadcast and demanding huge damages. Ali thereupon asserted a third party complaint against ABC in the federal action, claiming indemnity as well as contribution from ABC. ABC denied liability and cross-claimed against Ali for such damages as it might incur if Perez

should be successful against ABC in the state court. The federal suit was tried to a jury which resolved the issues in favor of Ali; this mooted Ali's third party claim against ABC. The ABC third party cross-claim against Ali was dismissed by the Court at the close of the entire case for failure of proof. Perez appealed from the dismissal of his complaint entered on the jury's verdict and that was unanimously affirmed by the Court of Appeals, Second Circuit on April 14, 1977, without opinion.

Thereafter, Ali claimed he was entitled to reimbursement from ABC of the attorneys' fees, costs and expenses incurred by him in his successful defense of the libel action and he demanded arbitration of this claim with ABC under the AFTRA Code. The standard contract set out in the AFTRA Code provides that the Producer of a program agrees to indemnify the Performer against "any and all claims, damages, liabilities, costs and expenses (including reasonable attorneys' fees)" arising out of "acts done or words spoken by Performer at Producer's request".

ABC promptly sued to enjoin Ali from proceeding with the demanded arbitration. Briefly, ABC contended that they were neither obligated to arbitrate with Ali on the issue he raised nor was the Ali claim arbitrable because it was allegedly embraced in and disposed of in the Perez litigation between the parties. ABC brought on an application for a preliminary injunction of the arbitration proceedings which was denied, in opinion, and the suit for an injunction was dismissed. D.C., 434 F.Supp. 1108 (1977), *aff'd on the opinion below*, 573 F.2d 1287 (2d Cir. 1977). The holding on the dismissal was that all questions sought to be raised by ABC in the lawsuit were arbitrable matters embraced by the very broad arbitration labor agreements involved. Pursuant to the requirements of the arbitration agreement, each party then named an arbitrator and in pursuance of the Voluntary Labor Arbitration Rules then obtaining of the American Arbitration Association, the selectees of the parties named as their unanimous first choice for the third— the impartial arbitrator—Professor Thomas

G. S. Christensen, Professor of Labor Law at New York University Law School who thereafter acted as the Chairman of the panel.

The arbitration was lengthy and sharply contested. A number of witnesses were examined, documentary evidence was produced and the Ali claim and ABC's defenses thereto were extensively argued and briefed by counsel. In an interim ruling the arbitration panel by a divided vote (ABC's selectee dissenting) found ABC liable to Ali.

The interim Award recites the following:

Under the provisions of the 1973–1976 Code of Fair Practice for Network Television Broadcasting, American Broadcasting Companies, Inc. and ABC Sports, Inc.:

1. is obligated to reimburse Muhammad Ali for legal expenses incurred in defense of the defamation action (and appeal from the verdict therein) filed against him by Anthony Perez, Jr.;

\*     \*     \*     \*     \*     \*

3. . . . jurisdiction is retained by this Board for the purpose of assessing the amount due under paragraph 1, above, with hearing before it for that purpose to be scheduled (absent stipulation of the parties to the contrary) by the American Arbitration Association;

The parties failed to stipulate on the damages due and the arbitration was reconvened and extensive evidence was taken by the arbitration panel in respect of the legal services involved in the claim and their value. Ultimately an Award was made on January 31, 1980 by the arbitration panel, (ABC's selectee again dissenting) in Ali's favor against ABC for $193,352., without interest.

Each of the determinations made on behalf of the arbitration panel was explained in meticulous detail in opinions rendered by the impartial chairman. The present suit followed shortly after announcement of the monetary Award.

Although this suit is cast in the mold of a claim under § 301 of the Labor Relations Management Act, the issue it presents is whether the Board of Arbitration acted within its authority and whether there are facts and rational inferences from facts to support its decision. Without question, the AFTRA Code controls the resolution of the disputes between ABC as Producer and Ali as Performer arising out of or connected with the television show here involved. This Court's previous decision held that the express terms of the arbitration agreement between the parties left it to the arbitrators to decide whether there was in "existence" an agreement covering Ali in the circumstances hereof and what the scope and meaning and application thereof were; and this interpretation of the function of the arbitrators was affirmed by the Court of Appeals.

There is a long standing policy of federal courts favoring finality of arbitration awards implicit in encouragement of parties to settle their differences according to the terms of their contracts.

Congress has specified in § 203(d) of the Labor Management Relations Act, 29 U.S.C. § 173(d) (1976) that " '[f]inal adjustment by a method agreed upon by the parties is declared to be the desirable method for settlement of grievance disputes' . . . . Courts are not to usurp those functions which collective bargaining contracts have properly 'entrusted to the arbitration tribunal' ". *Hines v. Anchor Motor Freight,* 424 U.S. 554, 562–63, 96 S.Ct. 1048, 1055, 47 L.Ed.2d 231 (1976) quoting *Steelworkers v. American Mfg. Co.,* 363 U.S. 564 at 569, 80 S.Ct. 1343 at 1347, 4 L.Ed.2d 1403 (1960). In *Hines, supra,* the Supreme Court has appositely stated:

> They [the district courts] should not undertake to review the merits of arbitration awards but should defer to the tribunal chosen by the parties finally to settle their disputes. Otherwise 'plenary review by a court of the merits would make meaningless the provisions that the arbitrator's decision is final, for in reality it would almost never be final.' [quoting from]

*Steelworkers v. Enterprise Corp.,* 363 U.S. 593, 599 [, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424, 1429] (1960).

The finality provision in the AFTRA Code has sufficient force to surmount mistake of fact and erroneous conclusions of law of the arbitrators. No dishonesty, bad faith or discriminatory conduct is alleged to have intruded on the arbitration proceedings. There is no criticism of the integrity of the operation of the contractual or arbitral machinery.

The statutes governing arbitration, 9 U.S.C. §§ 1–14 (1976) provide narrow grounds for vacating an Award. § 10. Nowhere is any provision made for vacation of an Award on the ground that the arbitrators erred in their factual findings or that the arbitrators reached faulty legal conclusions.

In this case the arbitrators had a choice of reasonable alternatives of decision. Having heard and seen the witnesses, resolved the issues of credibility and studied the AFTRA Code and the facts and circumstances of the situation presented by the dispute, the majority of the panel found in Ali's favor. It is not the Court's province to consider the evidence *de novo* or to substitute its notions of the evidence for those of the arbitrators. Selection from among perceived options is what we mean by saying that a rational decision has been reached. Suffice it to say that a careful scrutiny of the arbitration record fairly establishes that the arbitrators could rationally make the findings and reach the conclusions expressed in their Award the essence of which can be properly drawn from the Code being administered. There would be little purpose to arbitration of disputes if the unsuccessful party could come into court and overturn an Award on the ground that the arbitrators allegedly did not understand the case, misinterpreted the terms and purport of the contract and misapplied the evidence or decided on evidence and conclusions that the complaining party regards as insufficient or misconceived to sustain the Award. These grounds of displeasure with the

Award are not legally sufficient to set aside an Award. Moreover, there is no factual support for or justification for the grounds assigned by ABC. Each of the points made by ABC in the present suit seeking to vacate the Award was submitted to, considered and decided by the arbitrators.

■ A decision of arbitrators reached after proceedings adequate under the agreement, is final and binding upon the parties as the contract between AFTRA and ABC says it is. ABC is not now entitled to relitigate its dispute with Ali. To review the merits would create havoc with awards by arbitrators to settle labor disputes.

The facts shown in the record bearing on the circumstances and the major criticisms asserted by ABC concerning the Award are sufficiently indicated and reviewed in the chairman's Opinions. Without attempting to restate them all, the following may be noted.

In the Notice of Arbitration Ali had made the points that ABC had desired to broadcast something which appeared "sensational" and had intentionally broadcast Ali's statement which gave rise to the Perez suit. In that connection ABC sought protection under the terms of the Code so far as liability for the subsequent legal actions was concerned against "any ad libs spoken or unauthorized acts" furnished by the Performer, in contrast with "materials" and "acts done or words spoken by Performer at Producer's request". Addressing this point, the impartial chairman notes that Cosell had invited Ali to "express yourself as volubly as usual if you will" and that Cosell by comments and inquiries continued to prod Ali until the voluble Ali came forth with the comment that precipitated the defamation lawsuit. Cosell nonetheless pursued Ali with questions whether Ali was "finished with you tirade" and whether Ali was "embarrassed" by his showing against Wepner. Ali asked Cosell "why is it that you, [who] are nation-wide TV, why is [it] that Tony Perez, why is it that all the boxing officials, allow this dirt on Muhammad Ali?" From this exchange the impartial chairman concluded with substantial reason

that it is "plain beyond contest that there was no script which was followed by either Cosell or Ali in the statements made to each other in the course of the broadcast". The Opinion further states

> While I do not believe that Cosell dictated Ali's verbal responses during the interview, my repeated review of that program's content (both transcript and tape reproduction) leaves me with the unescapable conclusion that Ali's responses were induced, expected and planned by purposeful inquiry by Cosell. That they were not known *in haec verba* before this utterance is not controlling. Though Cosell may not have expected their entire vehemence or agreed with their content, I do not believe anyone who has viewed and reviewed this program's content could reasonably conclude that his questioning, however sparse, was not designed to elicit a response of the type he received. (Opin. 55)

A study of the facts and circumstances including the trial record, Cosell's testimony thereat, the tapes of the fight, the videotape of the interview, and a review of the transcript of the arbitration proceedings, confirms the conclusion reached by the majority arbitrators as a permissible view of the evidence, the resolution of the issues of credibility and the interpretation of the AFTRA Code. It could reasonably be concluded that the "ad lib" defense by ABC lost any force which it still might have had when, after reviewing the tape and considering what should be broadcast, ABC on the following day proceeded to broadcast nearly everything that had been videotaped previously, excising only some portions of the Ali interview which might be embarrassing racially and omitting entirely the contemporaneous Wepner interview by Cosell. The impartial arbitrator reasonably could conclude in rejecting the contention as well as the opinion of ABC's witness to the contrary, that:

> I cannot accept the proposition that a response which is fully expected as to, at least, its general tenor if not its specific verbiage, is an ad lib as such. In the

instant case, I note Mr. Cosell has publicly stated that his relationships on air with Ali were consistently designed to "challenge him" so that Ali would "bang back." (Opin. 56–57)

To recapitulate, comments made during a nonscripted program are not necessarily "ad libs" particularly when elicited or invited by one conducting the program and their general content, if not their actual wording is anticipated. That conclusion takes on added meaning when the responses are on a matter which is well known to be highly controversial and a matter of great emotional import to the speaker. I do not think it can reasonably be asserted by ABC that it and Cosell did not view the highly controversial situation addressed in the program as a basic reason for the airing of the program as well as an important increment to its probable audience appeal with the attendant financial benefits to the network. (Opin. 57–58)

The arbitrator's Opinion significantly points out:

The admitted fact that ABC had full power to show or not show the program as taped, that it could (and did) delete such portions as it wished and that it had a day in which to contemplate those alternatives between the taping and the actual telecast are, in my mind, facts of considerable significance. (Opin. 58)

\* \* \* \* \* \*

The argument of ABC in this connection, however, misses the point and begs the question. The right of control by the network does not *require* it to act; neither does it excuse its failure to act in ways which may affect its own liabilities. ABC was under no duty to delete any portion of the show which is in controversy. It also clearly had the power and right to do so prior to the broadcast. (Opin. 59–60)

The impartial arbitrator pointed out that ABC had "confused the question of whether ABC was under any *obligation* to edit the program's content with the entirely separate question of what responsibilities were

entailed when it failed to do so despite the authority and opportunity to do so" (Opin. 60 n.14). The arbitrators could rationally conclude as they did that

when ABC chose to air the March 29, 1975 program with full knowledge of its contents and full power and right and opportunity to delete all or part of the same, it abandoned any logical or realistic claim that it was an "unauthorized" statement which was then being communicated to millions of viewers. (Opin. 61)

The arbitrators concluded on all of the circumstances and facts before them that the defamation suit falls within the perimeters of the AFTRA agreement in that a civil action—based in large part on the program—followed its presentation (Opin. 64). It was clear to the arbitrators as it is to the Court "that it was the Cosell program which was considered to be the heart of the action actually brought" (Opin. 65).

The arbitrator's Opinion addresses the question raised by ABC in respect of the obligation which it deems Ali was under formally to ask ABC to defend him through its own counsel as to the suit against him. The considerations applicable appear to have been reasonably and rationally resolved in a manner entirely permissible as a construction of the AFTRA Code in the circumstances here disclosed. (Opin. 65–69).

Addressing the second phase of the arbitration, namely, the determination of the quantum of damage, the record amply supports the obligation imposed on ABC to reimburse Ali for his legal expenses in the amount of $193,352 as incurred and paid in the course of his defense of the defamation action filed against him by Perez. The monetary award excluded any obligation to pay Ali for additional legal expenses claimed by him in respect of actions relating to judicial stays of arbitration and appeals therefrom and denies the claim of Ali for interest on the amounts due him. The points now made in respect of the amount of the award were the same in substance as those made before the arbitrators and were examined severally and the amounts were

reviewed and decided upon and the damages established on the basis of evidence presented. As the report indicates

Thus counsel for Ali and ABC reached quite different conclusions as to the possible deductions to be made as to each of the areas of dispute as well as the ultimate measure of all deductions if any are made.

The determination of the quantum of the damages due to Ali under the circumstances was peculiarly a matter for the arbitrators and warrants no review by the Court.

■ It is clear from a total review that the matters complained of were fairly presented, contested and resolved on the basis of conflicting inferences and proofs. The Opinion for the panel by the impartial arbitrator is factually and legally well thought out and documented and furnishes a rational basis for the Awards. Court intervention is impermissible herein.

The Award of the arbitrators is accordingly confirmed in all respects and judgment thereon is due to Ali against American Broadcasting Companies, Inc. and ABC Sports, Inc. The complaint of the plaintiffs ABC against Ali herein is accordingly dismissed and the motion of Ali to confirm the award is granted and the Clerk is directed to enter judgment in favor of Muhammad Ali against the ABC companies for $193,-352.

SO ORDERED.