Sterling **SHARPE**, Plaintiff,

v.

**NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION,**
Defendant.

**Civil Action No. 95–1690 (JLG).**

United States District Court,
District of Columbia.

Oct. 16, 1996.

Grady C. Irvin, Jr., Gulfport, FL, Keith W. Watters, Keith Watters & Associates, Washington, DC, for plaintiff.

Joseph A. Yablonski, Yablonski, Both & Edelman, Washington, DC, for defendant.

## MEMORANDUM

JUNE L. GREEN, District Judge.

### I. Introduction

This matter is before the Court on the Defendant National Football League Players Association's ("Defendant") Motion to Dismiss. The Court holds that before it may consider the Plaintiff's complaint, the Plaintiff must receive, at least, an adverse decision from an arbitrator on his contract claim against his former employer. Since the arbitrator has not decided that claim, the Plaintiff's Complaint must be dismissed.

### II. Facts

The Plaintiff was a professional football player for the Green Bay Packers ("Packers") of the National Football League ("NFL"). (Compl. ¶ 3.) The Plaintiff was also a member of the collective bargaining unit represented by the Defendant with the right to be represented by the Defendant in individual grievance matters against the Packers. (Id. ¶ 3(a).) The Defendant is the exclusive collective bargaining representative for present and future professional football players in the NFL, representing such players in injury grievance claims against the players' employer-clubs. (Id. ¶ 4.)

In May 1993, the Defendant and the NFL Management Council signed a new collective bargaining agreement that controlled employment disputes between players and teams. (Id. ¶ 11.) In particular, the agreement provides for the filing of injury grievances by players against their employer-teams. (Id. ¶ 14.)

In 1991, the Plaintiff signed a contract that obligated him to play for the Packers through the year 2000. (Id. ¶ 3(c).) The Plaintiff was scheduled to be paid an installment on his 1995 salary by March 15, 1995. (Id. ¶ 3(e).) In the final week of the 1994 NFL season, the Plaintiff participated in a game and did not receive any injury. (Id. ¶ 19.) The Plaintiff alleges that, in February 1995, the Packers coerced him into having surgery and led him to believe that the team would pay his 1995 salary. (Id. ¶ 21.) After the surgery, the Plaintiff became physically unable to perform under the contract he signed with the Packers. (Id. ¶ 19(b).) The Packers subsequently terminated the Plaintiff. (Id. ¶ 19(c).)

On March 8, 1995, the Plaintiff submitted to arbitration an injury grievance against the Packers seeking the remainder of his 1995 salary. (Id. ¶ 26.) He alleged that the Packers wrongfully terminated him when he was physically unable to perform under his contract. (Id.)

The Plaintiff alleges that the Defendant urged him to withdraw his grievance and then, without Plaintiff's knowledge, secretly agreed with the NFL Management Council that the Defendant would expedite Plaintiff's claim and not treat it as an injury grievance. (Id. ¶ 28.) In addition, the Plaintiff alleges that the Defendant has left the arbitrator and the Management Council with the "impression" that the Defendant did not believe in the legitimacy of Plaintiff's claim. (Id. 31(c)(1).) The Plaintiff argues that the secret agreement would deprive the Plaintiff of the following: (1) the ability "to fully pursue the injury grievance claim[;]" (2) due process rights and important guidelines and procedures; (3) the necessary time to prepare his case; (4) the right to supplement the hearing record. (Id. ¶ 28.) The Plaintiff, therefore, believes that the Defendant did not represent him in good faith. (Id. ¶ 29.)

The Plaintiff then filed this action alleging that the Defendant breached its duty of fair representation of the Plaintiff.

### III. Discussion

Under the contract that the Plaintiff signed with the Packers, he agreed that any contractual dispute between the Packers and him would "be submitted to final and binding arbitration in accordance with the procedure called for in any collective bargaining agreement in existence at the time the event giving rise to any such dispute occurs." (Mot. to Dismiss Ex. B, ¶ 20.) The extant collective bargaining agreement contains two grievance procedures, each of which results in binding arbitration: (1) an injury grievance procedure; and (2) a non-injury grievance procedure, through which all other disputes "pertaining to terms and conditions of

employment of NFL players will be resolved exclusively...." (Mot. to Dismiss Ex. A.)[1]

The Plaintiff has chosen to arbitrate his dispute with the Packers while suing the Defendant before this Court. Yet, a suit against an employer alleging a breach of the collective bargaining agreement and a suit against the union for breach of the union's duty of fair representation are "inextricably interdependent." *DelCostello v. International Brotherhood Of Teamsters*, 462 U.S. 151, 164, 103 S.Ct. 2281, 2291, 76 L.Ed.2d 476 (1983). To prevail on either claim, an employee-union member must prove a violation of the employment contract and demonstrate the union's breach of duty. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570–71, 96 S.Ct. 1048, 1059–60, 47 L.Ed.2d 231 (1976). "The employee may, if he chooses, sue one defendant and not the other; but the case he must prove is the same whether he sues one, the other, or both." *DelCostello v. International Brotherhood of Teamsters*, 462 U.S. at 165, 103 S.Ct. at 2291.

The Plaintiff is obligated to arbitrate his contract claim against the Packers by virtue of his employment contract, the collective bargaining agreement and federal labor policy. *See Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965). Indeed, the Plaintiff has submitted his claim against the Packers to arbitration and it is pending. (Compl. ¶ 26.) The focus, therefore, "is no longer on the reasons for the union's failure to act but on whether, contrary to [an] arbitrator's decision, the employer breached the contract and whether there is substantial reason to believe that a union breach of duty contributed to [an] erroneous outcome of the contractual proceedings." *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. at 568, 96 S.Ct. at 1058. Consequently, before the Court can entertain the

Plaintiff's claim against the Defendant for breach of its duty of fair representation, the Plaintiff must receive, at least, an adverse decision from an arbitrator on his claim against the Packers. Since no such decision has yet been rendered, the Plaintiff's complaint is premature and must be dismissed.

The Court shall, therefore, grant the Defendant's Motion to Dismiss.[2]

## IV. Conclusion

In order to consider the Plaintiff's claim that the Defendant breached its duty of fair representation, the Plaintiff must submit his contract claim against the Packers to arbitration and, at least, receive an adverse decision. Since the arbitrator has not resolved this dispute, the Plaintiff's complaint must be dismissed.

---

1. Although the Court refers to the specific terms of the NFL Collective Bargaining Agreement and the Plaintiff's contract with the Packers, disposition under Federal Rule of Civil Procedure 12(b)(6) is still appropriate. *Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir.1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.")

2. Ordinarily the Court would entertain a jurisdictional issue at the outset. In the interest of judicial economy, however, the Court disposes of this matter by reaching the fairly straight-forward dispositive issue. The Court makes no ruling on the jurisdictional or duty of fair representation issues raised by the Defendant.