**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3597
_____

PROFESSIONAL EMERGENCY MEDICAL SERVICES ASSOCIATION OF NEW JERSEY
IAFF
LOCAL 4610 PFANJ AFLCIO,
                                                    Appellant

v.

MONMOUTH OCEAN HOSPITAL SERVICES CORPORATION (MONOC)
_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civ. No. 3-13-cv-02135)
District Judge: Hon. Michael A. Shipp
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
September 6, 2016
_____

Before: JORDAN, VANASKIE, and NYGAARD, *Circuit Judges*.

(Opinion Filed: March 1, 2017)
_____

OPINION[*]
_____

VANASKIE, *Circuit Judge*.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

Appellant Professional Emergency Medical Association of New Jersey, IAFF Local No. 4610, PFANJ, AFL-CIO, ("PEMSA"), appeals adverse rulings by the District Court concerning breach of contract claims asserted by PEMSA on behalf of three of its members against their employer, Monmouth Ocean Hospital Services Corporation ("MONOC"). Specifically, the District Court held that PEMSA's challenge to the discharge of Michael Dirr was barred by reason of PEMSA's failure to invoke the grievance process set forth in the Collective Bargaining Agreement ("CBA") between PEMSA and MONOC. As to the challenges to the disciplinary action taken against the other two union members, Christopher Elliott and Phil Kramer, the District Court held that MONOC's decisions were authorized by the CBA. For the reasons that follow, we will affirm the District Court orders.

## I.

MONOC is a non-profit corporation providing medical transport services. PEMSA is the union representing MONOC employees, including Dirr, Elliott and Kramer. MONOC and PEMSA are parties to a CBA that, among other things, governs MONOC disciplinary actions against PEMSA members and sets forth a grievance process for the resolution of "any controversy arising over the interpretation, application or alleged violation of [the] CBA." (App. 771 a). Authorized discipline under the CBA ranges from counseling, to issuance of "disciplinary units," to immediate termination. Under Article 4(A)(v) of the CBA, MONOC retains the right "[t]o remediate, counsel, suspend, demote, discharge, or take any other appropriate disciplinary action for just

2

cause against any employee consistent with the terms of [the CBA], subject to the grievance procedure." (App. 762a; emphasis added) The CBA lists more than 20 specific infractions that may, in the sole discretion of MONOC, result in immediate discharge.

## A. Disciplinary Units Issued to Elliott

On August 28, 2012, MONOC disciplined Elliott for the unauthorized carrying of a patient in Elliott's arms through the patient's house and to the patient's bed. There is no dispute that this action violated MONOC policy. The patient had complained of pain while being carried, and the patient's wife had informed MONOC that the patient's pre-existing back injury was aggravated as a result of being physically carried by Elliott. MONOC issued Elliott four "disciplinary units" for the alleged violation of Article 6(1)(C)(iii) of the CBA, which authorized MONOC to discipline an employee for:

> xx. Egregious deviation(s) from the standard of behavior associated with the employee's position, violations of company policies, procedures, protocols, performance standards, rules of employer, and/or infractions against local, state, or federal laws, rules, and/or governmental or accrediting agency regulations.

(App. 769a.) PEMSA unsuccessfully grieved the discipline imposed upon Elliott through the first two steps of the grievance process. MONOC denied PEMSA's request to mediate the matter. [1]

## B. Termination of Kramer

---

[1] Both PEMSA and MONOC must agree to proceed to mediation.

On November 6, 2012, MONOC terminated Kramer for refusing a work assignment and abandoning his position. The "Notice of Employee Action" issued to Kramer by MONOC's Director of Operations stated:

> On the morning of November 1, 2012, you refused to work with the partner you were assigned and chose to abandon your position. Aggravating this incident was the fact that New Jersey was operating under a state of emergency and our ability to staff all of our units was challenging at best.

The Notice indicated that the basis for the termination decision was Article 6(1)(E)(xvi) of the CBA, which provides:

> MONOC retains the right to discharge an employee for the first offense of any of the below infractions. MONOC in its sole discretion may consider mitigating circumstances and determine a lesser penalty is warranted. The following conduct is prohibited, and will subject any employee or contractor who might engage in same, to disciplinary action up to and/or including termination.
> . . .
> xvi. The refusal of an employee to follow the directions and instructions of Management concerning a work-related matter, absent an objective belief that the direction is patently illegal, immoral, or would result in direct and immediate harm to a patient or other person.

(App. 767a, 769a.)

PEMSA unsuccessfully grieved Kramer's discharge through the first two steps of the grievance process prescribed by the CBA. PEMSA did not request that the matter proceed to mediation with the New Jersey State Board of Mediation, the final step in the CBA grievance process.

**C. Termination of Dirr**

4

On March 28, 2013, Dirr received a phone call from his MONOC supervisor, Jeffrey Peck, who informed Dirr that he had the option to resign or be terminated. Dirr, accompanied by his PEMSA representative, Kramer, then met with Peck. According to the Amended Complaint:

> 44. At the meeting, Kramer presented a defense for Dirr and questioned the bona fides of the intended discipline against Dirr. Kramer asked questions of Peck regarding the investigation into Dirr's alleged conduct and whether or not the witnesses were questioned. Peck advised Kramer that the witnesses were not questioned causing Kramer to again question the veracity of the charges against Dirr.
>
> 45. Kramer asked Peck to confirm that Dirr was not given the opportunity to confront his accusers, that the witnesses were not questioned, and that Dirr was not given any of the evidence against him.
>
> 46. At that point, Peck contacted Defendant's Vice President of Administration, Stacy Quagliana to discuss the matter.
>
> 47. Peck then requested that Dirr meet without Kramer, which he did.
>
> 48. Dirr left the meeting with Peck having been served with a "Notice of Employee Action" dated March 28, 2013.
>
> 49. The March 28, 2013 "Notice of Employee Action" stated that Dirr was terminated . . . for allegedly refusing an assignment.

(App. 114a-115a.)

## II.

One week after Dirr was fired, PEMSA instituted this action without grieving Dirr's termination. Asserting that MONOC's disciplinary actions violated the CBA

5

because they were not supported by "just cause," PEMSA sought relief under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.[2]

On June 1, 2013, MONOC moved pursuant to Fed.R.Civ.P. 12(b)(6) for dismissal of the claims asserted on behalf of Kramer and Dirr on the ground that they had failed to exhaust the CBA grievance process. The District Court denied the motion as to the claims asserted on behalf of Kramer, for whom PEMSA had invoked the grievance process, but granted the motion as to the claims asserted on behalf of Dirr, for whom PEMSA had not pursued the grievance mechanism. The District Court, however, gave PEMSA the opportunity file an amended complaint to attempt to avoid dismissal of the claims relating to Dirr by alleging facts sufficient to excuse its admitted failure to invoke the CBA grievance process.[3]

PEMSA filed an Amended Complaint on August 28, 2013, and MONOC again moved for dismissal of the claims asserted on behalf of Dirr based upon PEMSA's failure to at least invoke the grievance process. Concluding that the additional allegations of the Amended Complaint concerning the fact that a union representative accompanied Dirr to his pre-termination meeting with Peck were not sufficient to invoke

---

[2] PEMSA's complaint also asserted breaches of the CBA in connection with discipline imposed by MONOC on three other PEMSA members. The parties have settled the claims asserted on behalf of two of those members, and PEMSA is not pursuing this appeal on behalf of the third member.

[3] The District Court concluded that PEMSA's pursuit of the first two steps of the three-step grievance process on behalf of Kramer was sufficient to avoid dismissal on exhaustion grounds in light of the Complaint's averment that PEMSA was informed that "the grievance procedures did not apply to disciplinary actions." (App. 23a)

the grievance machinery, the District Court dismissed PEMSA's claims relating to Dirr with prejudice. PEMSA's motion for reconsideration of this ruling was denied.

Following discovery, MONOC moved for summary judgment on the merits of the claims concerning Elliott and Kramer. Concluding that the record established "just cause" for the disciplinary actions in question, the District court granted summary judgment in favor of MONOC. This appeal on behalf of Dirr, Elliott and Kramer followed.

### III.

The District Court had jurisdiction pursuant to 29 U.S.C. § 185a. We have appellate jurisdiction under 28 U.S.C. § 1291. We engage in a plenary review of a district court's dismissal of claims, accepting all well-pleaded factual allegations as true and drawing all reasonable inferences in favor of the plaintiff. *Bell v. Cheswick Generating Station*, 734 F.3d 188, 193 n.5 (3d Cir. 2003). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

**A. Dismissal of Claims Asserted on behalf of Dirr**

Before bringing an action under Section 301 of the LMRA, a litigant must generally exhaust all available administrative remedies agreed upon by the employer and the union. *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965). This Court has recognized three exceptions to the exhaustion requirement: "(1) when the employer

7

repudiates the private grievance machinery; (2) when resort to administrative remedies would be futile; and (3) when the employer is joined in a [] claim against the union" for breaching its duty of fair representation. *Sisco v. Consol. Rail Corp.*, 732 F.2d 1188, 1190 (3d Cir. 1984). Nonetheless, an employee cannot sidestep the administrative grievance process "unless he attempted to utilize the contractual procedures for settling his dispute with his employer." *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 563 (1976); *see also Vaca v. Sipes*, 386 U.S. 171, 184 (1967) ("[I]t is settled that the employee must at least attempt to exhaust exclusive grievance and arbitration procedures established by the bargaining agreement.").

PEMSA concedes that it did not invoke the three-step grievance process on behalf of Dirr. Rather, PEMSA argues that it satisfied the requirement that it attempt to use the CBA dispute resolution process by sending a union representative to attend and present a defense for Dirr at the meeting in which MONOC terminated his employment. (*See* App. 114a–115a) Because any such attempt was prior to or contemporaneous with the discipline imposed on Dirr—the termination of his employment—it cannot constitute an attempt to challenge Dirr's discipline through the CBA dispute resolution mechanism. Accordingly, the District Court did not err in dismissing PEMSA's claims on behalf of Dirr.

**B. Summary Judgment on the Claims Concering Elliott and Kramer**

We engage in a plenary review of a district court's grant of summary judgment, "apply[ing] the same test the district court should have utilized initially." *Giles v.*

8

*Kearney*, 571 F.3d 318, 322 (3d Cir. 2009). A motion for summary judgment is properly granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)). Any questions of fact or inferences must be considered "in the light most favorable to the nonmoving party." *Peters v. Del. River Port Auth.*, 16 F.3d 1346, 1349 (3d Cir. 1994).

Under Article 4(A)(v) of the CBA, MONOC "retains and reserves unto itself, without limitation, all powers, rights, authority, duties and responsibilities vested in it . . . [t]o remediate, counsel, suspend, demote, discharge, or take any other appropriate disciplinary action for just cause against any employee consistent with the terms of this [CBA], subject to the grievance procedure." (App. 762a) Article 6(1) of the CBA provides the specific terms on which MONOC may impose discipline. (App. 764a– 770a.) The CBA also provides that in conducting an investigation for potential disciplinary action, "[t]he investigating manager shall make determinations regarding the credibility of each person who provides information to the manager during an investigation" and "[s]uch determinations shall be made within the investigating manager's discretion, and . . . may form the basis in whole, or in part, for disciplinary action." (App. 764a) Under the CBA, MONOC had "the right to discharge an employee for a first offense" of any of more than twenty separately enumerated

9

infractions. (App 767a.) Moreover, MONOC retained "sole discretion [to] consider mitigating circumstances and determine a lesser penalty is warranted." (*Id.*)

PEMSA argues that whether "just cause" existed with regard to MONOC's discipline imposed on Elliott and the termination of Kramer involves questions of fact and, thus, the District Court should not have granted summary judgment in favor of MONOC with regard to those claims. PEMSA supports this argument by citing to a number of cases where deference was given to an arbitrator with respect to determining when "just cause" exists. There is, however, no arbitration clause in the CBA at issue in this case and the language of the CBA specifically provides MONOC with discretion in determining the degree of discipline to impose on employees. Thus, the CBA unambiguously gives MONOC the discretion to make just cause determinations. Furthermore, when considered in its entirety, the CBA defines more than twenty instances of specific conduct that may constitute "just cause" for termination of employment. Stated otherwise, when one of those more than twenty types of infractions occur, then "just cause" for discipline exists.

### 1. Discipline as to Elliott

MONOC had issued four disciplinary units to Elliott, a full-time emergency medical technician ("EMT"), for violating company policy prohibiting the carrying of a patient. Under Article 6(1)(C)(iii)(a) of the CBA, MONOC had the right to impose four disciplinary units for the first incident that causes physical harm to a person due to a violation of MONOC policies and procedures. (App. 766a.) There is no dispute that in

10

August of 2012 Elliott had carried a hospice patient in his arms in violation of MONOC

Policy No. 726. The patient complained of pain at the time of the improper handling,

and the patient's wife later complained to MONOC that the improper handling had

caused the patient pain and aggravated an existing back injury. Two MONOC

investigators who looked into the incident spoke with Elliott and the patient's wife about

the allegations. PEMSA concedes that Elliott violated the policy by carrying the patient

in his arms, the patient complained of pain during the improper handling,[4] Elliott failed

to file an incident report with regard to the incident, and the patient's wife later

complained to MONOC about the incident.

PEMSA argues that MONOC's decision to impose the disciplinary units was

improper because (1) the evidence was insufficient to show that Elliott's actions caused

the patient harm; and (2) MONOC did not conduct a sufficiently thorough investigation

into the incident. There was, however, a factual basis for MONOC's finding that the

patient suffered physical harm. The discipline imposed is not inconsistent with the

terms of the CBA. Furthermore, the CBA explicitly gives MONOC investigating

managers the discretion to determine credibility and whether the evidence warrants

discipline. PEMSA's disagreement with how MONOC conducted its investigation and

with the weight MONOC accorded certain evidence ignores the fact that the CBA ceded

to MONOC the prerogative of making credibility determinations and that "such

---

[4] PEMSA disputes the characterization of the patient's complaints as "crying out" in pain, but acknowledges that the patient "stated '[o]uch that hurts'" during the improper handling. (Appellant Br. 7)

determinations may form the basis in whole, or in part, for disciplinary action." (App. 764a.) Discipline imposed based upon determinations left to the discretion of MONOC does not violate the CBA. Thus, because MONOC's actions in imposing the disciplinary units on Elliott were in accordance with the discretion provided to it under the CBA, the District Court properly granted summary judgment in favor of MONOC.

### 2. Discipline as to Kramer

MONOC terminated Kramer's employment as a per diem EMT after he refused to work a shift with a nurse with whom he had a prior dispute. This refusal occurred on November 1, 2012, while New Jersey was under a state of emergency in the aftermath of Hurricane Sandy. Kramer had been scheduled to work a shift starting at 9:00 a.m. that day, but arrived at MONOC's headquarters at 5:30 a.m. upon a manager's request that he report to work three hours early. When he was notified that he would be working with the nurse, Kramer declined the shift and left the job site, despite being warned that he would be suspended if he did not work the shift. MONOC ultimately terminated Kramer's employment pursuant to Article 6(1), subpart E(xvi) of the CBA, which specifies that "[t]he refusal by an employee to follow the directives and instructions of Management concerning a work-related matter, absent an objective belief that the directive is patently illegal, immoral, or would result in direct and immediate harm to a patient or other person" constitutes grounds for termination. (App. 769a)

PEMSA argues that Kramer believed he was entitled to decline the assignment because he was not scheduled to work that shift, that other employees did not receive

12

discipline as severe for similar conduct,[5] and that MONOC terminated Kramer because of personal animus.[6] Even if Kramer had a subjective belief that he did not need to work that shift and that MONOC was biased against him, Kramer does not deny that he committed an act subjecting him to termination under the CBA. Furthermore, even if, as Kramer suggests, other employees received lesser punishment for similar offenses, the CBA specifically gives MONOC the "sole discretion" to consider any lesser penalties or mitigating factors and was not required to give lesser punishment in consideration of such factors. (App. 767a.) Thus, MONOC acted within the substantial discretion afforded it under the CBA in determining that there was just cause to terminate Kramer's employment. Accordingly, the District Court appropriately granted summary judgment in favor of MONOC.

## IV.

For the reasons set forth herein, we will affirm the District Court's Orders dismissing PEMSA's claims on behalf of Dirr and granting summary judgment in favor of MONOC on the claims concerning Elliott and Kramer.

---

[5] PEMSA asserts that, following Kramer's termination, another employee allegedly refused a work assignment because of a personal dispute with a co-worker and received a mere non-disciplinary administrative counseling as discipline for the incident.

[6] PEMSA argued that MONOC had a personal animus against Kramer, who had served as the PEMSA delegate and represented other PEMSA members in disciplinary matters. To support this argument, PEMSA submitted an email from MONOC's Senior Vice President for Administration who, upon learning about Kramer's decision to deny the November 1 shift, stated she wanted to "take this opportunity to terminate a problem employee." (App. 1871a)